[Civ. No. 4491. First Appellate District, Division Two.—May 1, 1923.]

## D. RIPLEY JACKSON, Respondent, v. PEARL E. SNOW et al., Appellants.

[1] SPECIFIC PERFORMANCE—CONTRACT OF SALE OF REAL PROPERTY—AMBIGUITY—ORAL EVIDENCE—STIPULATION.—In this action to compel specific performance of the sale of real property, it having been agreed at the opening of the trial that oral testimony might be received for the purpose of explaining what appeared to be an ambiguity in the contract, and thereupon witnesses for the plaintiff having been permitted without objection to testify as to the terms and conditions upon which the property was offered for sale, the defendants were not prejudiced by the action of the court in overruling their objection to the introduction of the testimony of other witnesses which was merely cumulative.

[2] ID.—PROVISIONS AS TO ENCUMBRANCES—CONSTRUCTION—EVIDENCE. The provision in the contract that the sale of the property was "subject to conditions, restrictions, reservations and easements now of record" was in nowise repugnant to the language therein requiring that the certificate of title show the property to be "free and clear of all encumbrances whatsoever except as otherwise herein expressly provided for, to-wit: 1921–22 taxes," and the trial court properly so construed the contract, particularly where the oral evidence introduced showed that when the contract was executed the parties intended that the sale was made subject to all conditions, restrictions, reservations, and easements then of record.

[3] ID.—OUTSTANDING MORTGAGES—JUDGMENT.—In an action to compel specific performance of the sale of real property, a judgment requiring the payments to be made by the defendant only upon the tender to her by plaintiff of a guaranteed certificate of title showing title to the property to be in respondent free and clear of all encumbrances whatsoever except 1921–22 taxes, and conditions, restrictions, reservations, and easements then of record, requires the plaintiff to clear the title of any mortgages outstanding against the property.

[4] ID.—NEW TRIAL—BAD FAITH.—In this action to compel specific performance of the sale of real property, the facts and circumstances disclosed by the affidavits filed by defendant on her motion for a new trial and by her answer and cross-complaint so plainly disclosed bad faith on her part that the trial court was fully justified in denying her motion for a new trial.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank Bryant, Chas. H. Brock, J. N. Hastings and Earl E. Johnson for Appellants.

I. Henry Harris for Respondent.

NOURSE, J.—Plaintiff sued to enforce specific performance of the sale of real property. The plaintiff alleged that on the thirteenth day of September, 1921, plaintiff and the defendant Snow entered into a written contract which is attached as an exhibit to the complaint and is designated as a "Sales Deposit Receipt." This receipt recited that plaintiff's agents had received from the defendant Snow the sum of $1,650 as a deposit and part payment on the purchase price of the real property "subject to conditions, restrictions, reservations and easements now of record." The contract recited that the full purchase price was $11,000, $5,500, including the amount therein receipted for, being payable upon the execution and delivery of deed, together with a guaranteed certificate of title showing title to said property to be in said owner "free and clear of all encumbrances whatsoever, except as otherwise herein expressly provided for, to wit: 1921–22 taxes." The complaint further alleged that the plaintiff had performed all the terms required of him under the contract, but that the defendant had refused to accept the property and had repudiated the contract. It was also alleged that the property included in the contract was worth the sum of $11,000, and not less, and that the transfer of said property was an adequate consideration for the payment of the moneys agreed to be paid by the purchaser; that the contract as to the defendant Snow was in all respects just and reasonable and was not obtained by any misrepresentation, con-

cealment, or unfair practices, and that the assent of neither party was obtained under influence of mistake, misapprehension, or surprise. The prayer called for a decree compelling the defendant Snow to carry out the terms of the contract and compelling the defendant Title Insurance and Trust Company to pay over to the plaintiff the sum of $1,650 which had been deposited with it in escrow as part of the first payment under the contract. Each defendant filed a separate answer. That of the defendant Snow admitted all the material allegations of plaintiff's complaint excepting those relating to plaintiffs being ready and able to transfer said property free from defect in title, or that plaintiff otherwise performed or substantially fulfilled the terms of his contract. By way of separate defense it was alleged that certain restrictions, conditions, and reservations stood of record against said property contained in the deeds of conveyance through which the plaintiff deraigned title as follows: A restriction prohibiting the sale of intoxicating liquor upon the property, one prohibiting the erection of a building within less than thirty feet from the front line thereof, and one prohibiting the erection of a building thereon less than $1,000 in value except on the rear of the lot. By way of cross-complaint the same defendant set forth these restrictions as constituting a material defect against the title to the property and alleged that without said restrictions said property would be reasonably worth the sum of $16,000; that the purchase price thereof fixed in said contract was $11,000, and that by reason of plaintiff's failure to convey the property free from such restrictions said defendant had been damaged in the sum of $5,000. A demurrer to this cross-complaint was sustained and the amended answer of the defendant Snow was filed, omitting all reference to the cross-complaint and claim for damages and praying merely for the return of the sum of $1,650 which had been deposited in escrow as part of the first payment. At the same time an amended cross-complaint was filed which contained the same allegations relating to the value of the property which appeared in the original answer and cross-complaint and prayed for damages in the sum of $5,000 in addition to the return of the original deposit. The case was tried upon these pleadings and findings were made that by virtue of the contract of the parties it was understood

and agreed that the defendant Snow purchased said property subject to the conditions, restrictions, and easements then of record and subject to 1921–22 taxes; that the plaintiff was always ready, willing, and able to perform his part of the contract, but that the defendant had violated her contract and declined and refused to accept the property subject to the conditions and restrictions of record as agreed in said contract; that the allegations of the cross-complaint were not true and that there were no defects in the title of said property other than such defects as the defendant Snow agreed to accept. Judgment was rendered in favor of the plaintiff, commanding the defendant Snow to perform the terms of her contract and commanding the defendant Title Insurance and Trust Company to pay to the plaintiff the sum of $1,650 less any sum due it from the plaintiff under the escrow agreement. Both defendants have appealed from the judgment.

The appeal of the appellant Title Insurance and Trust Company does not require separate consideration. Its appeal was taken under the provisions of section 953a of the Code of Civil Procedure and is presented to this court with nothing more than a recital of the findings of fact and conclusions of law made by the trial court and a statement by the appellant that it has no interest in the litigation other than as an escrow agent and in maintaining the *status quo* of the escrow until a final judgment is obtained defining the rights of the respective parties. It could have reached this same result by depositing the money in court at the time of the trial of the action and thus saved the parties some unnecessary expense.

The appeal of the appellant Snow presents three grounds for consideration: (1) That the admission of oral testimony to explain the written contract was error; (2) that the judgment entered was for an excessive amount in that there was an outstanding mortgage upon the property for $2,500 which this appellant will be required to assume in addition to the payment of $11,000 which was the agreed price for the property; (3) that this appellant was entitled to a new trial on the showing made on the hearing of her motion in the trial court.

[1] (1) Upon the first point the argument is that, where part of a contract is written and part printed and the writ-

ten and printed parts are inconsistent, the words in writing will control the construction and oral evidence to explain the intention of the parties is not admissible. At the opening of the trial counsel for respondent made an oral statement of the case in which it was said that the only issue before the court was whether the language of the written contract "showing title to said property to be in the said owner free and clear of all encumbrances whatsoever except as otherwise herein expressly provided for, to wit: 1921–22 taxes" ("1921–22 taxes" of the portion quoted being written in the contract and the remainder thereof being printed), controlled the other printed portion of the contract which read "subject to conditions, restrictions, reservations and easements now of record." As to what then occurred, we quote from the reporter's transcript: "The Court: Well, that is an ambiguity that will call for oral testimony to explain. Mr. Harris: Yes, sir. The Court: You concur, gentlemen for the defense, in that statement as being substantially the issue involved? Mr. Landreth: I am representing the real defendant [Snow] and that is substantially the case, the ambiguity which will be explained by oral testimony, or, after the actual receipt is before the court, by the examination of the actual written instrument and the rules of construction." Thereafter respondent produced a witness who testified that before the property was offered for sale the auctioneer announced in the presence of all the prospective bidders that the property would be sold subject to the restrictions and reservations of record and the taxes for 1921–22. This testimony was all received without objection. Other witnesses were called and testified to the same effect, and then for the first time counsel for appellant interposed the objection that the written contract embodied all the terms of the agreement and that the oral testimony was improper. Having agreed at the opening of the trial that oral testimony might be received for that purpose, and having permitted the testimony of the witness O'Connor to be given without objection, this appellant cannot claim prejudice in the overruling of his objection to the introduction of the testimony of other witnesses which was merely cumulative.

[2] We find no error in the trial court's construction of the contract. The language "subject to conditions, re-

strictions, reservations, and easements now of record'' is in nowise repugnant to the language ''free and clear of all encumbrances whatsoever except as otherwise herein expressly provided for, to wit: 1921–22 taxes.'' Though it is true that, in the legal sense, restrictions, reservations, and easements are treated as encumbrances upon realty, it is likewise true that such is not the common or ordinary use of the term by the layman. The common use of the term ''encumbrances'' by the layman relates to something that is a lien upon the property which requires the payment of money to discharge. It is scarcely, if ever, used in reference to a restriction, reservation, right of way, or other easement. It is a cardinal rule of construction of all contracts that the court should ascertain the intention of the parties where this is possible. For this purpose the whole contract is taken together so as to give effect to every part (sec. 1641, Civ. Code), and technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense. (Sec. 1645, Civ. Code.) If the terms of a promise are in any respect ambiguous or uncertain, then the contract must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it. (Sec. 1649, Civ. Code.) It is only in a case where the written portion of a contract is ''absolutely repugnant'' to the printed portion that the latter must be disregarded. (Sec. 1651, Civ. Code.)

All the evidence received in this case shows beyond a doubt that when the contract was executed the parties intended that the sale was made subject to all conditions, restrictions, reservations, and easements then of record. The contract was executed in the office of this appellant's husband, who was then employed in the trust department of the title company and was a man experienced in the examination and preparation of contracts of this nature. According to his own testimony, he conceived the idea that the writing ''1921–22 taxes'' would support the contention that the printed portion of the contract relating to restrictions, reservations, and easements might be disregarded. He so advised his wife, and, acting upon his advice, she repudiated the contract, though at the time of the trial she failed to appear and offered no evidence to aid the court in arriving

at the intention of the parties at the time of the execution of the contract. In accordance with the sections of the code above cited the trial court properly construed the contract to mean that the property was taken subject to the conditions, restrictions, reservations, and easements then of record and that such was the intention of the parties at the time of its execution.

[3] (2) The second point raised by this appellant is wholly without merit. In the first place, there is no evidence in the record that a mortgage of $2,500, or in any other sum, was outstanding at the time of the trial; but if such be the case, this appellant is fully protected by the judgment, which provides that the payments required of this appellant are to be made only upon the tender to her by the respondent of a guaranteed certificate of title showing title to said property to be in respondent free and clear of all encumbrances whatsoever except 1921–22 taxes, and conditions, restrictions, reservations, and easements then of record. This plainly requires the respondent to clear the title of any mortgages outstanding against the property.

[4] (3) The affidavits filed by this appellant on her motion for a new trial disclose a state of facts which plainly indicates that her entire action in this proceeding was taken in bad faith. Her own affidavit alleged that she was sick at the time of the trial and was unable to be present in court, but it appears from the record that no request for a continuance of the trial had been made. She also alleged that she was present at all times and within reasonable distance from the auctioneer and heard his statements, but that at no time did the auctioneer state or announce that the property would be taken subject to any conditions, restrictions, reservations, or easements whatsoever. This, of course, was merely contradictory of the testimony of the four witnesses who testified at the request of the respondent that such announcement had been made by the auctioneer. The other affidavits presented upon this motion merely set before the court matters of questionable legal advice which had been given to the appellant. She was, however, represented in court on the day of the trial by her counsel who was not prevented from protecting her interests, and it does not appear that she was in any way prejudiced by any advice which she had received from others. In her cross-

complaint she alleged that the restrictions relating to the use and occupation of the property materially affected the value thereof, that without said restrictions such property would be reasonably worth the sum of $16,000, while with said restrictions it was not reasonably worth more than $11,000. Upon this allegation she prayed for damages in the sum of $5,000 for the failure of respondent to convey the property to her without said restrictions. This in itself was sufficient to satisfy the trial court that this appellant was not defending the action in good faith; that her claim relating to the construction of the contract was purely technical, because, if the property was worth $11,000 with the restrictions, she was getting just what she bargained for, whereas if she had knowledge of the restrictions and executed the contract with the intention that the respondent should be required to remove them, she was taking an undue and unfair advantage of the respondent, because she must have known either that they could not be removed or that, if removed, the value of the property would be enhanced to her profit to the extent of $5,000. All these circumstances so plainly disclosed the bad faith on the part of this appellant that the trial court was fully justified in denying her motion for a new trial.

The judgment is affirmed.

Sturtevant, J., and Langdon, P. J., concurred.