[Civ. No. 46437. Second Dist., Div. Two. Oct. 17, 1975.]

AMERICAN TITLE COMPANY, Plaintiff and Respondent, v.
HORACE ANDERSON et al., Defendants and Appellants.

---

## COUNSEL

Crist, Crist, Griffiths, Bryant & Schulz and Frank Lee Crist, Jr., for Defendants and Appellants.

Ball, Hunt, Hart, Brown & Baerwitz, James C. Maupin, and Stephen B. Mitchell for Plaintiff and Respondent.

---

## OPINION

**COMPTON, J.**—American Title Company (American) commenced this action against Horace and Marguerite Anderson (defendants) with the filing of a complaint for a common count, money had and received, alleging that there was $13,500 due American. The defendants answered with a general denial.

American noticed a motion for summary judgment supported by the declaration of its vice president G. F. Leo. Defendants filed no counter-declarations. The trial court granted American's motion and entered a summary judgment in its favor in the amount prayed for. The defendants appeal.

### FACTS

This dispute centers around the title to a certain parcel of real property. On June 17, 1965, Harold W. Anderson and Christine Anderson (the Andersons) executed and delivered to the defendants a joint tenancy grant deed of the parcel of real property in question. On December 26, 1968, the Andersons filed an action (Los Angeles Superior Court No. 874105) against defendants seeking to quiet title to the property and to have the grant deed declared to be a mortgage. Contemporaneously with the filing of that action the Andersons recorded a notice of lis pendens as to the subject property.

On July 31, 1969, while the above referenced action was pending, defendants conveyed the property by grant deed to Harry and Rosetta Binns (the Binns). On that same date American issued a policy of title insurance insuring title to the property in the name of the Binns. Subsequently, on November 3, 1971, the superior court in case No. 874105 entered a judgment quieting title in the Andersons, declaring that the deed by which the defendants had purported to hold title to the property was in fact a mortgage to secure the payment of a loan in the sum of $10,500 and declaring that the loan had been fully repaid. Thereafter, according to its declaration, American "settled" with Binns by paying $13,500 on the Binns' claim of damages in the amount of $19,000.[1]

In the instant action American seeks, by way of subrogation, to recover the $13,500 paid to the Binns. The declaration of Mr. Leo in support of a motion for summary judgment concedes that American failed to discover the recorded notice of lis pendens prior to the time that it issued its policy of title insurance.

### DEFENDANTS' CONTENTIONS

Defendants contend first that the Binns had no claim against them to which American can be subrogated because, according to defendants, they breached no covenant with the Binns. Secondly, defendants argue that assuming that the Binns could have asserted a claim against them, American is not entitled in equity to be subrogated thereto.

### DISCUSSION

From the use of the word "grant" in a conveyance of a fee simple estate two covenants are implied in California, i.e., that the grantor has not previously conveyed an interest in the estate to any other person and that the estate is free from encumbrances created or suffered by the grantor. (Civ. Code, § 1113.) Here there is no contention that defendants breached the covenant against prior conveyances.

"The term 'incumbrances' includes taxes, assessments, and all liens upon real property." (Civ. Code, § 1114.) This provision has been interpreted as embracing ". . . any right to, or interest in, land which may subsist in another to the diminution of its value, but consistent with the

---

[1] The policy showed the scheduled liability to be $19,000. Thus we assume that the Binns' initial demand was simply in the amount of the policy limit.

passing of the fee." (*Evans* v. *Faught,* 231 Cal.App.2d 698, at p. 706 [42 Cal.Rptr. 133].) "As applied to an estate in land an encumbrance may include whatever charges, burdens, obstructs, or impairs its use or impedes its transfer." (*Johnson* v. *Bridge,* 60 Cal.App. 629, at p. 632 [213 P. 512].)

Defendants contend that since the litigation affecting the property involved an adverse claim which, if successful, would totally defeat their title, the lis pendens did not constitute an encumbrance as that term is defined for the purpose of the implied covenant.

We need not decide whether a lis pendens coupled with a properly recorded notice thereof constitutes an encumbrance within the meaning of Civil Code sections 1113 and 1114, since the Binns were not limited in their right to recover from the defendants to an action for breach of the implied covenant against encumbrances.

█ Simply stated, the transaction here involved defendants' purported grant to the Binns of a fee simple estate in real property in which they had no title whatsoever. (Civ. Code, §§ 2888, 2924.) The Binns could have proceeded directly against defendants on the theory of a failure of consideration or breach of agreement to convey real property. Further since the Binns were obviously laboring under a mistake as to the status of defendants' title, they could have sought rescission. (Civ. Code, § 1577; *Hargrove* v. *Henderson,* 108 Cal.App. 667 [292 P. 148]; *Mitchell* v. *California-Pacific T. Ins. Co.,* 79 Cal.App. 45 [248 P. 1035]; *Darr* v. *Cleveland Realty Corp.,* 33 Cal.App.2d 500, 506 [92 P.2d 475].) The latter remedy would be available whether defendants also mistakenly believed in the validity of their title or knowing of the defect they failed to disclose it. (See 33 A.L.R. 848.)

Having concluded that defendants had an obligation to the Binns we now turn to the question of whether American is entitled to be subrogated to the Binns' right to enforce that obligation.

American, in settling with the Binns, was satisfying its primary contractual obligation to them. █ It is well established that where two parties are obligated to indemnify the same person for the same loss, the payment of the obligation by one does not create a right in him superior to the nonpaying party which would justify subrogation if the latter did not cause the loss. (*Patent Scaffolding Co.* v. *William Simpson Constr. Co.,* 256 Cal.App.2d 506 [64 Cal.Rptr. 187].) In other words, and

more simply stated, equity will not by the use of the remedy of subrogation permit one obligor to shift his obligation to another by being the first to pay unless the equities of the situation dictate that the latter ought to bear the onus of the obligation.

█ Here, contrary to the usual situation of two innocent indemnitors, both American and the defendants contributed to whatever recoverable loss was suffered by the Binns. In such situation it could be facilely argued that a court of equity should leave the parties where it found them and deny equitable relief. The sin of American, however, was one of omission, while the sin of the defendants was one of commission and one which was the genesis of the problem.

American was, of course, contractually obligated to pay for any loss suffered by the Binns as a result of a defect in the title. American's issuance of the policy of title insurance, however, did not cause the failure of the title. It did undoubtedly cause the Binns to part with any consideration they gave.

On the other hand, defendants were parties to the original transaction with the Andersons and were parties to the quiet title action in which their record title was under attack and by any standard of fair dealing should have disclosed the facts to either the Binns or American. Thus it could be said that defendants' attempt to sell something they did not own coupled with their failure to disclose was the primary cause of any loss suffered by the Binns. Further, and of importance, is the fact that defendants' retention of any consideration they received would amount to unjust enrichment. This latter consideration clearly weights the balance of the equities in favor of American's right to subrogation.

## THE ISSUE OF DAMAGES

█ The amount of the judgment to which American would be entitled on subrogation would be limited to the amount which the Binns could have recovered had they proceeded directly against the defendants. In settling with the Binns for any greater amount, American would be a volunteer.

American's liability to the Binns was measured by the amount of actual loss suffered by the Binns as a result of the failure of the title (15 Couch on Insurance 2d, § 57:179; 60 A.L.R.2d 975; 9 Appleman, Insurance Law and Practice, § 5217), and the measure of damages would

be the value of the estate purported to be conveyed up to the policy limits. (15 Couch on Insurance 2d, § 57:182; 60 A.L.R.2d 977.)

On the other hand the damages for which defendants would be liable to the Binns could vary according to the particular theory of recovery.

Civil Code section 3306 provides: "The detriment caused by the breach of an agreement to convey an estate in real property, is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; but adding thereto, in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land." In an action for rescission recovery would be limited to "out-of-pocket" damages.

We have concluded, therefore, that we cannot affirm the summary judgment for the reason that American's declaration does not lay to rest the factual issue of whether their settlement with the Binns, under the principles we have set forth, was reasonable and within the limits of the potential liability. ■ When indemnification is sought on the basis of a settlement effected with the creditor the question of liability and the limit thereof are still open factual questions. (*Lamb* v. *Belt Casualty Co.*, 3 Cal.App.2d 624, 631 [40 P.2d 311].) The settlement is only presumptive evidence of the liability and the amount, subject to being overcome by proof. (*Fidelity & Deposit Co.* v. *Whitson,* 187 Cal.App.2d 751 [10 Cal.Rptr. 6].)

■ As noted earlier, defendants filed no counter declaration in opposition to the motion for summary judgment. This fact does not relieve American of the burden of establishing evidentiary facts of every element necessary to entitle it to judgment. (*People* ex rel. *State Lands Commission* v. *Superior Court,* 36 Cal.App.3d 727 [111 Cal.Rptr. 733]; *Residents of Beverly Glen, Inc.* v. *City of Los Angeles,* 34 Cal.App.3d 117 [109 Cal.Rptr. 724].)

American's declaration, while adequate in all other respects, does not with sufficient particularity set forth the basis of its settlement with Binns, so as to fix the amount of damages to be awarded on its action in subrogation. We note that the policy of title insurance reflected a first trust deed executed by the Andersons in favor of a lending institution to secure a note of $15,500 and a second trust deed executed by the Binns in

favor of the defendants to secure a note of $3,100. There is nothing in the record to show how much additional consideration, if any, was paid by the Binns to the defendants nor is there any evidence of the value of the property in question.

The judgment is reversed and the matter is remanded to the trial court for further proceedings in light of the principles set forth in our opinion. Each side to bear its own costs.

Roth, P. J., and Fleming, J., concurred.