78 Cal.App.3d 371 (1978)
144 Cal. Rptr. 189
HASKEL ENGINEERING & SUPPLY COMPANY, Plaintiff and Respondent,
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant and Appellant.
Docket No. 51040.
Court of Appeals of California, Second District, Division One.
March 8, 1978.
*373 COUNSEL
Belcher, Henzie & Biegenzahn and Stephen R. Hastings for Defendant and Appellant.
Jonas, Fern & Simpson and William J. Beynon for Plaintiff and Respondent.
OPINION
THOMPSON, J.
This appeal from a summary judgment in declaratory relief raises an issue apparently not previously considered in California. (1a) We are required to determine whether, where the obligor on a fidelity bond has fully reimbursed its obligee for loss caused by the embezzlement of an employee, the obligor or the obligee is entitled to increases in value of property acquired by the employee with the embezzled funds. Recognizing that the equitable principles of constructive trust and subrogation collide when applied to the issue, we conclude that the obligor is entitled to the benefit of the increase in value to the extent that the increase, when combined with other amounts recovered from the employee, does not exceed the payments made to the obligee by the obligor.
Hartford Accident and Indemnity Company issued its fidelity bond in the amount of $100,000 to Haskel Engineering & Supply Company. The bond obligates Hartford to "pay [Haskel] for ... Loss of Money, Securities and other property which [Haskel] shall sustain through any fraudulent or dishonest act or acts committed by any ... Employees...."
Section 14 of the policy states: "In the event of any payment under this endorsement [Hartford] shall be subrogated to all [Haskel's] rights of recovery therefor against any person or organization and [Haskel] shall execute and deliver instruments and papers and do whatsoever else is necessary to secure such rights. [Haskel] shall do nothing after loss to prejudice such rights."
*374 Haskel employed Howard Bentley. Between October 1973 and May 1975, while the fidelity bond was in force, Bentley embezzled some $58,000 from Haskel. On July 24, 1975, shortly after the embezzlement was discovered, Haskel sued Bentley. Its complaint[1] seeks damages from Bentley for the amount of his defalcation plus punitive damages, seeks to impose a constructive trust upon a parcel of real property acquired by Bentley with approximately $8,000 of those proceeds, and asks that a preliminary injunction be issued restraining Bentley's disposition of the property.
By stipulation, to which Hartford was not a party, an order was entered declaring that Bentley held the property as constructive trustee for Haskel and authorizing sale of the property. The real property was sold. After deducting the amount required to discharge a note secured by deed of trust upon the property, Haskel received approximately $22,000 from the sale. Haskel thus obtained about $14,000 more than the $8,000 of embezzled funds used to purchase the real property. It recovered approximately $3,000 in cash in addition from Bentley.
Haskel filed its proof of loss with Hartford. The parties agreed that Hartford was entitled to credit against its obligation the $3,000 recovered in cash and the $8,000 traceable into the real property. There remained in dispute the disposition of the $14,000 representing the increase in value of the real property after it was acquired by Bentley with the embezzled $8,000. Hartford asserted that Haskel's reimbursable loss was reduced by the $14,000, while Haskel claimed the sum as the profit realized on property held in constructive trust. As part of the settlement, Haskel assigned its pending causes of action to Hartford.
Haskel filed an action in declaratory relief to resolve the dispute with Hartford. Hartford's answer admits the factual allegations of Haskel's complaint. Both Haskel and Hartford moved for summary judgment. Neither expanded the pleadings by declarations of fact.
The trial court granted Haskel's motion and denied that of Hartford. This appeal from the resulting judgment followed.

*375 Contract

Our analysis begins with the contract of the parties. The fidelity bond obligates Hartford to pay Haskel its loss occasioned by the defalcation of Bentley. If Hartford's position on appeal is sustained, it will have paid Haskel all of the latter's loss caused by Bentley's embezzlement and Hartford's out-of-pocket loss incident to the payment will be reduced by the $14,000 increase in value in the real property subject to the constructive trust. If the trial court's ruling is sustained, Haskel will show a $14,000 profit by reason of Bentley's embezzlement and Hartford's loss will be increased accordingly. Thus, the trial court action reaches a result seemingly contrary to that provided by the agreement of the parties.
Haskel argues, however, that: (1) as beneficiary of an equitably imposed constructive trust on the real property acquired by Bentley, Haskel is entitled to the increment in value of the property independently of its contract with Hartford; (2) Hartford as surety for the obligation of Bentley owes an obligation coextensive with that of its principal and hence is obligated as if it were the constructive trustee; and (3) any result contrary to that reached by the trial court will unjustly enrich Bentley by reducing his obligation to Hartford as subrogee of Haskel.

Constructive Trust  Subrogation
(2) Civil Code sections 2223 and 2224 codify the equitable principle that one who wrongfully acquires property of another holds the property as an involuntary constructive trustee. The constructive trust extends to property acquired in exchange for that wrongfully acquired (Rest., Restitution, § 160, com. h; Annot. (1971) 38 A.L.R.3d 1354), and includes "the direct product," i.e., profit on and enhancement in value of the property traced into the trust. (Rest., Restitution, § 205.)
(3) The concept of constructive trust is, however, one of equitable remedy (7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 131) to prevent unjust enrichment and enforce restitution (Rest., Restitution, § 1, com. e, §§ 3, 4, introductory note to pt. II, p. 640). Because the concept is one of remedy designed solely to prevent unjust enrichment, the incidents of a constructive trust differ from those of an express or resulting trust. (Rest., Restitution, § 160, coms. a-c.)
*376 Thus, as between Haskel and Bentley, Haskel was entitled to impress a constructive trust upon property acquired by Bentley with the fruit of his embezzlement of Haskel's funds. The remedy available to Haskel also entitled it to the enhanced value of the property because otherwise Bentley would have been unjustly enriched by the profit he made on the funds of Haskel.
(1b) As between Haskel and Hartford, however, the situation is different. Hartford was not unjustly enriched by Bentley's wrong. To the contrary, it is also a loser in the transaction, albeit a loser which assumed the risk of loss for consideration. Bentley's assets, including the enhanced value of the real property, were insufficient to allow recoupment.
As one who paid Haskel for the loss caused by another, Hartford was, by the terms of the contract and operation of law (Rest., Restitution, § 162, com. b), entitled to be subrogated to Haskel's rights against the embezzler to recoup the amount paid. The right of subrogation conferred upon Hartford the power "to enforce such rights and powers as [Haskel] had ..." against Bentley. (Rest., Restitution, § 162, com. d.)
(4) While we have found no California authority specifically holding that the right of subrogation includes the power to exercise the equitable remedy of constructive trust possessed by the subrogor prior to the payment of the obligation of another by the subrogee, that conclusion flows not only from the general principles of subrogation but also from a directly analogous California decision. (5) Subrogation carries with it the right of the subrogee to pursue an equitable lien possessed by the subrogor. (Kenney v. Kenney (1950) 97 Cal. App.2d 60, 62 [217 P.2d 151].) An equitable lien, like a constructive trust, is a remedy designed to enforce restitution so as to prevent unjust enrichment. (Rest., Restitution, introductory note to pt. II, p. 640.)
(1c) In sum, Hartford, by reason of its right of subrogation, was entitled to pursue the remedy of constructive trust possessed by Haskel. The remedy reached the enhanced value of the real property acquired by the embezzler to the extent the enhanced value was necessary to Hartford's recoupment. Haskel, by itself bringing action against Bentley and pursuing the right to constructive trust, breached the obligation imposed upon it by the contract to "do nothing ... to prejudice" that right. If Haskel and not Hartford is given the benefit of enhanced value *377 conferred by pursuit of the remedy of constructive trust, Haskel is enriched by its $14,000 profit on Bentley's embezzlement, and the enrichment is unjust by reason of Haskel's breach. That result violates the concept that subrogation must be liberally applied to prevent unjust enrichment (Estate of Johnson (1966) 240 Cal. App.2d 742, 744-745 [50 Cal. Rptr. 147]).
We thus conclude that the equitable bases of the remedies of constructive trust and subrogation applied in the context of the contract between the parties compel the conclusion that Hartford and not Haskel is entitled to the benefit of the enhancement in value of the real property. That conclusion is buttressed by the one analogous out-of-state decision which our research has uncovered. There the remedy of constructive trust reached real property after its sale was rescinded for fraud of the purchaser in paying the purchase price in notes of another known by the purchaser to be worthless. Some of the notes were innocently transferred by the seller to a broker as the broker's commission on the sale. When impressed with the constructive trust, the property had increased in value. The Texas Supreme Court held that the seller and broker were entitled to share pro rata in the increase. To do otherwise, said that court, would permit the seller to obtain the benefit of equity while denying equity to another who also was harmed. (Meadows v. Bierschwale (Tex. 1974) 516 S.W.2d 125, 132.)

Suretyship
Haskel characterizes the transaction as one of principal (Bentley), surety (Hartford), and creditor (Haskel). It argues from that characterization that Hartford's liability as surety is coextensive with that of Bentley, its principal, and hence includes the obligation to surrender to Haskel the enhancement in value of the real property.
We need not reach the nature of the contract between Haskel and Hartford as one of surety or indemnity. We need not consider whether the substantive liability of a surety is in fact coextensive with that of the principal (see Mortgage Finance Corp. v. Howard (1962) 210 Cal. App.2d 569, 572 [26 Cal. Rptr. 917]), or whether the situation is controlled by Civil Code section 2809 which provides only that the obligation of the surety may be no more burdensome than that of the principal. (See U.S. Leasing Corp. v. duPont (1968) 69 Cal.2d 275, 290 [70 Cal. Rptr. 393, 444 *378 P.2d 65]; Brunswick Corp. v. Hays (1971) 16 Cal. App.3d 134, 137 [93 Cal. Rptr. 635].) If we assume that Hartford's obligation as surety was coextensive with that of Bentley, the principal in a suretyship situation, nevertheless Hartford's rights of subrogation are in no way diminished.
Unlike an express or resulting trust which creates substantive rights enforceable by various remedies, a constructive trust is itself only a remedy. The beneficiary of the constructive trust is entitled to enhancement in value of the trust property not because he has a substantive right to it but rather to prevent unjust enrichment of the wrongdoer-constructive trustee. Absent unjust enrichment, then, the subrogee which satisfies an assumed coextensive obligation of its principal is entitled to the enhanced value. On the facts here it is Haskel that will be unjustly enriched if the constructive trust is treated as if it were an express or resulting trust conferring a substantive right in the trust res to the beneficiary.

Unjust Enrichment of Bentley
Haskel seeks to justify the result reached in the trial court by the proposition that unless that result is sustained Bentley will be unjustly enriched. It argues that Hartford's subrogated right against Bentley extends only to amounts it has paid to Haskel. Hence, asserts Haskel, Bentley's obligation will be reduced if the amount paid by Hartford is diminished by the enhancement in value of the real property which is the subject of the constructive trust.
The procedural posture of the case at bench precludes the argument asserted by Haskel. We are reviewing a summary judgment in Haskel's favor. That judgment is sustainable, if at all, on the basis of the theoretical unjust enrichment of Bentley only if Haskel has established as a matter of law that: (1) Bentley will be enriched, and (2) if he will, that Haskel's own conduct has not contributed to Bentley's gain. "`Equity does not aid one who is the sole cause of his own misfortune.'" (Biescar v. Czechoslovak-Patronat (1956) 145 Cal. App.2d 133, 147 [302 P.2d 104].) Neither the file in the case at bench nor the file in the Haskel-Bentley lawsuit negates either possibility.
Absent the assignment to Hartford, Haskel presumably could have obtained judgment against Bentley for the full $58,000 embezzled by *379 Bentley. Because of the principles of constructive trust, the proceeds of the sale of the real property would have satisfied the judgment only to the extent of the $8,000 used to purchase it and not to the extent of the $22,000 realized in its sale. Nothing in the record here establishes that the assignment was not willingly made by Haskel with full knowledge of its consequences.
Nothing in the record establishes that Hartford, as Haskel's assignee, is not entitled to proceed in a fashion which exercises all of Hartford's rights to recovery including those incident to constructive trust. Those rights include the limitation upon satisfaction of judgment to the traced funds used by Bentley to acquire the real property and not the amount realized on its sale. Thus, nothing establishes either that Bentley will be unjustly enriched by reduction of the liability side of his balance sheet or that, should lightning strike, the $14,000 enhancement in value will not be recoverable from him.

Disposition
The judgment is reversed.
Lillie, Acting P.J., and Hanson, J., concurred.
NOTES
[1] We take judicial notice of the file in the action in which Haskel sued Bentley.