[No. D008990. Fourth Dist., Div. One. Oct. 26, 1989.]

FIDELITY NATIONAL TITLE INSURANCE COMPANY, Plaintiff and Appellant, v.
CLAYTON L. MILLER, Defendant and Respondent.

COUNSEL

Peter C. Holzer and Thomas Allan Shaw for Plaintiff and Appellant.

Duke, Gerstel, Shearer & Bregante, Richard D. Bregante and Michael S. Woodlock for Defendant and Respondent.

OPINION

KREMER, P. J.—Plaintiff Fidelity National Title Insurance Company appeals summary judgment favoring defendant Clayton L. Miller on its complaint for breach of warranty and common counts. We reverse the summary judgment because the record discloses numerous triable factual issues.

I

FACTS

■ In reviewing the propriety of summary judgment, we must accept the evidence and inferences most favorable to Fidelity. (*Hepp* v. *Lockheed-California Co.* (1978) 86 Cal.App.3d 714, 717-718 [150 Cal.Rptr. 408].) Applying that standard, the evidence shows: Miller owned Coronado property. In 1953 Miller encumbered the property with a restrictive covenant granting neighbor Whitby a "view easement." The Whitby restrictive covenant was recorded. Years later Miller wanted to convey the property to his daughter and son-in-law, Jean and Raymond Gazzo (together Gazzo). Miller told Gazzo he had given Whitby a view easement. Apparently Miller was unsure whether Whitby had recorded her restrictive covenant. In 1986 Gazzo and Miller opened escrow. Fidelity issued a preliminary report not mentioning the Whitby encumbrance. Gazzo asked Fidelity whether the property was encumbered by a restriction not appearing on the preliminary report. Fidelity found nothing. Fidelity issued a title insurance policy to Gazzo not mentioning the Whitby encumbrance. Miller conveyed the property to Gazzo by unrestricted grant deed without excepting the Whitby restrictive covenant. After escrow closed, Gazzo discovered the Whitby encumbrance had been recorded. Gazzo made a claim against Fidelity under the title insurance policy. Fidelity paid Gazzo $125,000 under the title insurance policy for the diminution in the property's value resulting from the Whitby encumbrance. Gazzo executed a release and assignment of rights favoring Fidelity.

## II

## PLEADINGS

### A

#### FIDELITY'S AMENDED COMPLAINT

Fidelity sued Miller for breach of warranty and common counts. Fidelity's amended complaint alleged: Miller delivered to Gazzo a grant deed conveying a fee simple interest in the property. Under Civil Code section 1113, Miller impliedly covenanted the estate granted was free from any encumbrances made by Miller.[1] At the time Miller executed the deed, the property was subject to the Whitby restrictive covenant. Under its title insurance policy Fidelity paid Gazzo $125,000, allegedly representing the amount the restrictive covenant diminished the property's value. As Gazzo's subrogee, Fidelity sought $125,000 from Miller for damages resulting from his breach of section 1113's implied covenant.

### B

#### MILLER'S ANSWER AND CROSS-COMPLAINT

Answering Fidelity's amended complaint, Miller alleged various affirmative defenses including contributory negligence, lack of standing, waiver, estoppel, modification, lack of equity, unclean hands and derivative liability.

Miller also cross-complained against Fidelity and USAA Property and Casualty Insurance for negligent misrepresentation, breach of contract, and breach of the duty of good faith and fair dealing.

---

[1] Civil Code section 1113 provides: "From the use of the word 'grant' in any conveyance by which an estate of inheritance or fee simple is to be passed, the following covenants, and none other, on the part of the grantor for himself and his heirs to the grantee, his heirs, and assigns, are implied, unless restrained by express terms contained in such conveyance: [¶] 1. That previous to the time of the execution of such conveyance, the grantor has not conveyed the same estate, or any right, title, or interest therein, to any person other than the grantee; [¶] 2. That such estate is at the time of the execution of such conveyance free from encumbrances done, made, or suffered by the grantor, or any person claiming under him. [¶] Such covenants may be sued upon in the same manner as if they had been expressly inserted in the conveyance."

All statutory references are to the Civil Code unless otherwise specified.

III

MILLER'S MOTION FOR SUMMARY JUDGMENT

Miller sought summary judgment on Fidelity's complaint, asserting subrogee Fidelity had no right to recover against Miller because subrogor Gazzo knew the restrictive covenant might exist and thus was not entitled to recover from Miller for breach of section 1113's implied covenant. Miller characterized Fidelity's payment to Gazzo as voluntary. Miller also asserted Fidelity's recovery was barred because in executing the grant deed he relied on Fidelity's negligently prepared abstract of title.

Supporting and opposing Miller's summary judgment motion, the parties presented portions of depositions by Miller, Gazzo, escrow agents and Fidelity's employee.

After argument the court granted summary judgment. The court stated: "The basis for my ruling is that the rights of your carrier are no greater than the rights of their insured. And I don't think there's merit to the position that there is an implied covenant in this deed that there are no impediments to title when Miller came forth and told the escrow people that there was, in his opinion, a Whitby covenant and it was necessary for them to check out the validity of it as part of the escrow transaction."

The court entered summary judgment favoring Miller. Fidelity appeals.

IV

DISCUSSION

■ On this record the superior court should have denied Miller's motion for summary judgment. The record contains conflicting evidence requiring factual determinations bearing on the issues whether Miller breached section 1113's implied covenant against encumbrances by conveying the property to Gazzo by an unrestricted grant deed after encumbering the property with a restrictive covenant favoring Whitby, whether Gazzo could recover damages from Miller for any such breach, and whether Fidelity was entitled to subrogation from Miller. Also dependent upon resolution of disputed factual issues is the amount, if any, by which any recovery by Fidelity from Miller should be diminished if Miller prevails on any of his answer's affirmative defenses or his cross-complaint.[2]

---

[2] We express no opinion on the legal tenability of any theory asserted in Miller's answer and cross-complaint.

## A

The superior court's ruling the grant deed did not contain an implied covenant was based on its conclusion Miller during escrow disclosed to Gazzo and Fidelity the potential existence of the Whitby encumbrance. ■ However, the mere fact Gazzo and Fidelity may have known during escrow of the possibility a restrictive covenant might encumber the property does not necessarily preclude Fidelity from recovering in subrogation for Miller's breach of the implied covenant. (*Evans* v. *Faught* (1965) 231 Cal.App.2d 698, 709-711 [42 Cal.Rptr. 133].) For purposes of section 1113, a covenant running with the land restricting the use of property constitutes an encumbrance. (*Id.* at p. 706, citing *Fraser* v. *Bentel* (1911) 161 Cal. 390, 393-394 [119 P. 509]; *Jackson* v. *Snow* (1923) 62 Cal.App. 56, 61 [216 P. 60].) In *Evans* v. *Faught, supra,* at page 709, the court stated the well-established California rule: "If the encumbrance is one affecting title the covenant against encumbrances is broken at the time of the transfer and the vendor's prior knowledge or notice of the encumbrance is immaterial . . . ." The court in *Evans* v. *Faught* held a buyer's knowledge of the existence of an unrecorded lease before execution of the conveyance did not bar an action for breach of covenant since the buyer "was entitled to rely upon the covenant in the deed made subsequent to the acquisition of such knowledge." (*Id.* at p. 711.)[3]

## B

■ Miller contends the court could properly "construe the grant deed in light of *all* the circumstances surrounding the transaction" and conclude he and Gazzo impliedly agreed the grant deed would not contain an implied covenant against encumbrances. However, the construction of the grant deed propounded by Miller does not constitute the only reasonable construction that could be drawn from the evidence before the court. Thus, on

---

[3] Legal practice manuals discussing the implied covenant against encumbrances are instructive on this point.

"[A] grant deed to encumbered property without words of restraint breaches this covenant. The seller may not defend on the ground that the buyer had notice from the preliminary title report or otherwise; the action is on breach of contract and does not require a showing of reliance or misrepresentation. [Citations.] [¶] The covenant is breached, if untrue, when the instrument is executed. [Citation.]" (Cal. Real Property Sales Transactions (Cont.Ed.Bar 1981) Covenants of Title, § 9.7, p. 569.)

Section 1113 implies the covenants against prior conveyances and encumbrances ". . . from the use of the word 'grant' unless such covenants are restrained by express terms in the deed. Therefore, the grantor who does not want to imply the statutory warranties can specify that his grant is made without warranty of any kind or can specifically set forth in the deed the encumbrances to which the property is subject. The description of the encumbrances will negate any implication of warranty against those encumbrances." (3 Augustine & Zarrow, Cal. Real Estate Law & Practice (1989) Deeds, § 80.21(6), p. 80-19.)

the motion for summary judgment the court could not properly adopt such construction as a matter of law. (*Taylor* v. *Fields* (1986) 178 Cal.App.3d 653, 659 [224 Cal.Rptr. 186].)

Code of Civil Procedure section 437c, subdivision (c), provides: "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, *except summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.*" (Italics added.)

■ "It is settled under Code of Civil Procedure section 437c summary judgment procedure that the trial court is not limited to a search for facts on a particular issue, but may draw inferences regarding that issue from the relevant facts set forth in the affidavits. [Citation.] Hence, the trial court is to consider all inferences reasonably deducible from the evidence [citation], and the lack of a triable issue of fact may be established by inference where the inference is the only reasonable one that can be drawn from the evidence for and against the motion. [Citation.]." (*Taylor* v. *Fields, supra,* 178 Cal.App.3d at p. 659.) ■ "Summary judgments are reversible on the finding of factual issues based on inferences first drawn by the appellate court. [Citation.]" (*Conn* v. *National Can Corp.* (1981) 124 Cal.App.3d 630, 637 [177 Cal.Rptr. 445].)

■ By its terms section 1113 implies a covenant against encumbrances in a grant deed "unless restrained by *express terms* contained in such conveyance." (Italics added.) "There can be no implied covenant where the subject matter is *expressly agreed* upon by the parties to the contrary. [Citations.]" (*Babb* v. *Weemer* (1964) 225 Cal.App.2d 546, 552 [37 Cal.Rptr. 533], italics added.) Miller presented no evidence compelling a finding as a matter of law that he and Gazzo expressly agreed to exclude from their contract section 1113's implied covenant against encumbrances. Indeed, in his points and authorities supporting his motion Miller admitted "none of the writings surrounding the transaction contain an exception from the conveyance of the Whitby Covenant." Further, Miller cites no authority suggesting the implied covenant can be deleted by implied agreement.

■ Assuming the statutorily implied covenant can be deleted by implied agreement, on this record the existence of such implied agreement

would require resolution of triable factual issues. Indeed, the evidence before the court and reasonable inferences would support the contrary finding advanced by Fidelity that the grant deed did not exclude the statutorily implied covenant. On its face the grant deed appears to convey the property without limitation. The language of the grant deed itself constitutes evidence contradicting Miller's claim he and Gazzo impliedly agreed the grant deed would not contain section 1113's implied covenant against encumbrances.

At most Miller has suggested the meaning of the grant deed's language and the intentions of Gazzo and Miller are uncertain and thus may be explained by extrinsic evidence. (*Walsh v. Walsh* (1941) 18 Cal.2d 439, 443-444 [116 P.2d 62].) ■ "When a contract is in any of its terms or provisions ambiguous or uncertain, 'it is primarily the duty of the trial court to construe it *after a full opportunity afforded all the parties in the case to produce evidence of the facts, circumstances and conditions surrounding its execution and the conduct of the parties relative thereto.*' [Citation.] [Italics added.]" (*Id*. at p. 443.) " 'When the meaning of the language of a contract is uncertain or doubtful and parol evidence is introduced in aid of its interpretation, *the question of its meaning is one of fact* . . . . [Citations.]' [Italics added.]" (*Id*. at p. 444.) ■ Miller has not shown the grant deed is in any of its terms or provisions ambiguous or uncertain. For that reason alone, the court considering the motion for summary judgment could not properly adopt the interpretation of the grant deed advanced by Miller.

Further, on this record a fact finder could reasonably infer there was no agreement between Miller and Gazzo that the grant deed would not contain the statutorily implied covenant against encumbrances. Gazzo's surprise upon discovering the recorded Whitby covenant and his filing a claim against Fidelity suggest he had no such agreement with Miller.[4] Also casting doubt on the existence of any such agreement is Miller's claim he executed the facially unrestricted grant deed because he in fact believed the property was unencumbered in justifiable reliance on Fidelity's representations.

C

■ Miller contends as a matter of law Fidelity should not be entitled to equitable subrogation because Miller disclosed to Gazzo and Fidelity the potential existence of the Whitby encumbrance. However, the ultimate determination whether Fidelity is entitled to equitable subrogation depends upon resolution of disputed factual issues.

---

[4] We note Fidelity's title insurance policy appears not to insure Gazzo against loss resulting from title risks he agreed to, allowed or created.

 "[E]quitable assignment or right of subrogation is a creature of equity and applies to all cases where one party involuntarily pays a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter [citations]." (*In re Marriage of Shore* (1977) 71 Cal.App.3d 290, 297 [139 Cal.Rptr. 349].) "Subrogation carries with it the right of the subrogee to pursue an equitable lien possessed by the subrogor. [Citation.] An equitable lien, like a constructive trust, is a remedy designed to enforce restitution so as to prevent unjust enrichment. [Citation.]" (*Haskel Engineering & Supply Co.* v. *Hartford Acc. & Indem. Co.* (1978) 78 Cal.App.3d 371, 376 [144 Cal.Rptr. 189].) "[E]quity will not by the use of the remedy of subrogation permit one obligor to shift his obligation to another by being the first to pay unless the equities of the situation dictate that the latter ought to bear the onus of the obligation." (*American Title Co.* v. *Anderson* (1975) 52 Cal.App.3d 255, 260 [125 Cal.Rptr. 24].)

 The evidence would support findings the primary cause of any loss suffered by Gazzo was Miller's encumbering the property, Fidelity's issuance of the title insurance policy—though perhaps causing Gazzo to part with consideration—did not cause the encumbrance, Fidelity was contractually obligated to pay for any loss suffered by Gazzo as a result of the encumbrance, and Fidelity satisfied its primary contractual obligation to Gazzo by settling. Thus, the ultimate fact finder could reasonably determine any "sin" by Fidelity was "one of omission," while that of Miller was "one of commission and one which was the genesis of the problem." (*Id.* at p. 260.) Further, a court might reasonably conclude Miller's retaining the entire consideration received from Gazzo would amount to unjust enrichment. Accordingly, the court might ultimately determine those considerations tilted the balance of the equities in favor of Fidelity's right to subrogation. (*Ibid.*)

### D

 In an argument grounded on the allegations of his answer and cross-complaint, Miller contends Fidelity's recovery should be barred because he executed the grant deed to Gazzo in reliance on representations by Fidelity amounting essentially to an abstract of title. However, the evidence raises a triable factual issue about whether Fidelity issued only a preliminary report and a title insurance policy, not an abstract of title. (Ins. Code, §§ 12340.1, 12340.2, 12340.10, 12340.11.)[5] The evidence also raises triable

---

[5] Insurance Code section 12340.1 defines "title insurance" as insuring, guaranteeing or indemnifying real property owners against loss or damage resulting from encumbrances on the property or the incorrectness of searches relating to property's title.

Insurance Code section 12340.2 defines "title policy" as "any written instrument or contract by means of which title insurance liability is assumed."

Insurance Code section 12340.10 defines "abstract of title" as "a written representation, provided pursuant to a contract, whether written or oral, intended to be relied upon by the

factual issues about whether Miller in fact justifiably relied on any representations by Fidelity regarding the state of the title.

■ "Title insurance is a contract for indemnity under which the insurer is obligated to indemnify the insured against losses sustained in the event that a specific contingency, e.g., the discovery of a lien or encumbrance affecting title, occurs. [Citations.] The policy of title insurance, however, does not constitute a representation that the contingency insured against will not occur. [Citations.] Accordingly, when such contingency occurs, no action for negligence or negligent misrepresentation will lie against the insurer based upon the policy of title insurance alone. [Citations.]" *(Lawrence v. Chicago Title Ins. Co.* (1987) 192 Cal.App.3d 70, 74-75 [237 Cal.Rptr. 264].) A title insurance policy is ". . . a contract to indemnify against loss caused by defects in the title or encumbrances on the title. It is not a representation that the title is in any particular condition. [Citation.]" *(Smith v. Commonwealth Land Title Ins. Co.* (1986) 177 Cal.App.3d 625, 631 [223 Cal.Rptr. 339].)

Insurance Code sections 12340.10 and 12340.11 make "clear that no reliance may be placed on a preliminary report or a policy of title insurance to show the condition of title." (Cal. Title Insurance Practice (Cont.Ed.Bar Supp. 1988) § 2.11, p. 14.) "A preliminary report is not an abstract of title. It only reflects the terms under which the insurer is willing to issue a policy of title insurance. The terms and conditions under which the policy of insurance may be issued may or may not reflect the true condition of record title. The insurer may choose to ignore or omit a possible exception to title based on an underwriting decision." *(Id.,* § 3.19 at p. 37.) Given Insurance Code sections 12340.10 and 12340.11, "it is clear that any title search or examination is performed by the insurer solely for the purpose of seeking to evaluate its underwriting decision in issuing the policy, not for the benefit of the insured." *(Id.,* § 5.27 at p. 67.)

person who has contracted for the receipt of such representation, listing all recorded conveyances, instruments or documents which, under the laws of this state, impart constructive notice with respect to the chain of title to the real property described therein. An abstract of title is not a title policy as defined in Section 12340.2."

Insurance Code section 12340.11 defines "preliminary reports" as "reports furnished in connection with an application for title insurance and are offers to issue a title policy subject to the stated exceptions set forth in the reports and such other matters as may be incorporated by reference therein. The reports are not abstracts of title, nor are any of the rights, duties or responsibilities applicable to the preparation and issuance of an abstract of title applicable to the issuance of any report. Any such report shall not be construed as, nor constitute, a representation as to the condition of title to real property, but shall constitute a statement of the terms and conditions upon which the issuer is willing to issue its title policy, if such offer is accepted."

 Although Miller claims Fidelity effectively provided an abstract of title, Fidelity presented evidence it issued only a preliminary report and a title insurance policy. For purposes of Miller's summary judgment motion, we must accept Fidelity's evidence on that issue. Further, the record contains evidence to support findings Miller did not converse with any Fidelity employee and did not see the preliminary report or title insurance policy. The record also contains evidence to support a finding Miller executed the grant deed before Fidelity issued its preliminary report. Such evidence and reasonable inferences raise triable factual issues about Miller's asserted reliance on representations by Fidelity.

Miller's motion for summary judgment addressed only the adequacy of Fidelity's complaint. The record contains triable factual issues bearing on whether Fidelity can eventually prove its case. Whether Miller ultimately succeeds in reducing Fidelity's recovery by prevailing on his affirmative defenses or his cross-complaint—perhaps by proving detrimental justifiable reliance on Fidelity's representations deemed to constitute an abstract of title or on some other theory—depends upon resolution of factual matters beyond the scope of this summary judgment motion.

On this record resolution of the lawsuit cannot be determined as a matter of law. Triable factual issues abound. Miller is not entitled to summary judgment.

### DISPOSITION

The judgment is reversed. Each shall bear its own costs on appeal.

Work, J., concurred.

**HUFFMAN, J.,** Dissenting.—The trial court granted summary judgment in favor of Miller on the basis Fidelity had no greater rights than Gazzo in whose place they stood on a theory of equitable subrogation. Since Gazzo was fully informed of the possible existence of the Whitby easement prior to the completion of the sale, the trial court correctly found no implied covenant of title on the basis of the grant deed.

The parties to the actual transaction diligently sought to determine if the Whitby easement had been perfected. They sought assistance from an escrow company and Fidelity to make that determination. Fidelity was negligent in its search. It failed to find a recorded easement which had been on the books for decades. It is patent from this record the parties, both Gazzo and Miller, relied on Fidelity's negligent representations and *not* any implied covenants in the grant deed.

The focus of the reliance is best understood when one realizes it was Gazzo, not Miller, who undertook to work with the escrow to investigate the Whitby easement. Miller had made full disclosure to Gazzo.

In his testimony Gazzo described in detail his efforts through the escrow company to have Fidelity investigate the issue of title. Gazzo was advised, based on Fidelity's negligent representation: "Miller has fee title, except for this party wall thing [an unrelated matter]." He further pursued the issue with the escrow company and asked them to follow up on the easement specifically. Gazzo was advised that a Mr. Whitmoyer of Fidelity had specifically investigated the easement to Whitby and found it was nonexistent. In short, the person in whose shoes Fidelity seeks to stand made crystal clear he relied on Fidelity's representations, not on any "implied covenant" within a grant deed which Gazzo knew was prepared by the very escrow agent who was involved in the investigation of the Whitby easement. Clearly, Fidelity has no right to now seek to claim Gazzo's rights under such an "implied covenant."

The trial judge understood clearly what had transpired in this case and was absolutely correct in the grant of summary judgment. We should affirm his decision.

A petition for a rehearing was denied November 21, 1989, and the opinion was modified to read as printed as above.