8 F.3d 27
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
LAWYERS TITLE INSURANCE CORPORATION,
Plaintiff-Counter-Defendant-Appellant,
v.
URBAN PACIFIC DEVELOPMENT CORPORATION; Victorio-Mirabella
One, Inc.; Victorio-Mirabella Two, Inc.; The
Mirabella Partnership; Michael Reyes;
Defendants-Counter-Claimants-Appellees.
 No. 92-55335.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 2, 1993.
Decided Oct. 12, 1993.
 
 1
 Before: TANG, CANBY and BEEZER, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Lawyers Title Insurance Corporation ("Lawyers Title") appeals from the district court's summary judgment rejecting its subrogation claim. We review de novo, T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987), and we affirm.
 
 
 4
 * Background
 
 
 5
 The facts underlying this appeal are complicated but important. In April 1979, Lloyd and Dorothy Bridges agreed to sell to Urban Pacific Development Corporation ("Urban Pacific") a parcel of property located on Wilshire Boulevard in Los Angeles; Urban Pacific was to construct a multi-unit luxury condominium building on the property. The terms of the purchase and sale agreement required Urban Pacific to pay $6,200,000 in cash and, upon completion of the building, to transfer title to the penthouse condominium to the Bridges. In May 1979, a Memorandum of Contract of Purchase and Sale, ("the Memorandum"), which referred to the underlying Contract of Purchase and Sale, was signed by the Bridges and Michael V. Reyes, President of Urban Pacific. At the request of Lawyers Title, the Memorandum was recorded in the Los Angeles County Recorder's Office; thereafter, Lawyers Title issued a supplement to the Preliminary Title Report and described the Memorandum as an exception to title.
 
 
 6
 During the pendency of escrow, Urban Pacific assigned its right to purchase the property to the Mirabella Partnership. After a series of corporate restructurings, the Mirabella Partnership consisted of two partners: Victorio-Mirabella One, Inc. ("VM-1") and Victorio-Mirabella Two, Inc. ("VM-2"). On July 29, 1979, the Bridges and the Mirabella Partnership signed escrow instructions declining to approve the Preliminary Title Report; on July 30th they submitted a supplemental escrow instruction requesting that Lawyers Title delete the Memorandum as an exception from the title insurance policy. On August 1, 1980, escrow closed and the Mirabella Partnership acquired title to the property. On the same date, Lawyers Title issued a title insurance policy to the Mirabella Partnership ("the Owner's Policy"). The Owner's Policy did not list the Memorandum as an exception, but it did contain a general exception for encumbrances agreed to by the insured claimants.
 
 
 7
 On December 1, 1980, the Mirabella Partnership obtained a $53,000,000 construction loan from First Interstate Bank ("the Bank") and, to secure repayment of the loan, gave the Bank a first lien deed of trust on the property. On December 3, 1980, Lawyers Title issued a title insurance policy ("the Lender's Policy") insuring the Bank as the senior lienholder on the property. The Lender's Policy did not list the recorded Memorandum or the underlying contract of purchase and sale as exceptions from coverage.
 
 
 8
 In July 1983, construction of the condominium building was completed. The Mirabella Partnership subsequently defaulted on the construction loan and, in February 1985, the Bank conducted a nonjudicial foreclosure sale. In May 1985, the Bridges filed an action in Los Angeles Superior Court seeking to enforce their contractual right to the penthouse. Lawyers Title provided a defense for the Bank in the state court proceedings. It also provided a defense for Urban Pacific, the Mirabella Partnership, VM-1, and VM-2, under a reservation of rights permitting it to deny coverage or a duty to defend. In September 1987, the Superior Court entered judgment ordering the Bank to convey the penthouse to the Bridges. In May 1988, Lawyers Title paid approximately $1,300,000 to the Bank pursuant to the Lender's Policy; this sum represented the $1,000,000 value of the penthouse plus approximately $300,000 in costs.
 
 
 9
 Lawyers Title subsequently filed this action in the district court and sought declaratory relief and damages against Urban Pacific, the Mirabella Partnership, VM-1, VM-2, and Michael Reyes ("the Defendants"). The district court ruled that the Bridges' claim was not covered by the Owner's Policy because it had been voluntarily agreed to by the insured owners. Lawyers Title was accordingly entitled to reimbursement of its defense costs for that part of the action. The district court also ruled that Lawyers Title did not have a right of subrogation against the Defendants for the $1,300,000 it paid to the Bank under the Lender's Policy. Lawyers Title appeals this latter portion of the district court's judgment.
 
 II
 Subrogation
 
 10
 Lawyers Title argues that the district court erred by determining that it did not have a right of subrogation against the Defendants. We disagree.
 
 The district court found that:
 
 11
 Lawyers Title issued a Lender's Policy to First Interstate Bank.... Defendants were not unjustly enriched by Lawyer's Title's payment of the obligations of First Interstate Bank as determined by the Superior Court.... Lawyer's Title profited by providing title insurance to Defendants and to the Bank. Lawyers Title had intentionally deleted the record of the [Memorandum concerning the] Penthouse from the Owner's Policy. Lawyers Title had at least constructive knowledge of the risk imposed by providing a Lender's Policy that did not expressly exclude liability for the Penthouse that Lawyers Title excluded from other documents. Construing the relevant contracts by their own terms and, specifically, viewing the Owner's Policy and the Lender's Policy as separate instruments, Lawyers Title was not and is not subrogated to the rights of First Interstate Bank against each or any of the Defendants herein.
 
 
 12
 Lawyers Title correctly argues that an insurer is prohibited from subrogating against its own insured only for losses covered by the insurance policy. See St. Paul Fire & Marine Ins. Co. v. Murray Plumbing & Heating Corp., 135 Cal.Rptr. 120, 124 (Ct.App.1976) ("where, by the terms of the policy under which the loss is paid there is no coverage extended to others, subrogation is permitted as against those others responsible for the loss"). Nevertheless, the district court did not reject the subrogation claim on the ground that the Defendants were insureds of Lawyers Title. Instead, the district court based its decision on equitable considerations and found that the equities of this case do not weigh in favor of allowing Lawyers Title to subrogate against the Defendants.
 
 
 13
 We agree with the district court's analysis. Under California law, subrogation is an equitable remedy, and courts must evaluate the facts of the case before permitting subrogation. See id. (noting that subrogation is an equitable doctrine that applies when an insurer pays a debt "which, in equity and good conscience, should have been discharged by [another]"); see also American Title Co. v. Anderson, 125 Cal.Rptr. 24, 26 (Ct.App.1975) ("equity will not by the use of the remedy of subrogation permit one obligor to shift his obligation to another by being the first to pay unless the equities of the situation dictate that the latter ought to bear the onus of the obligation"). Before Lawyers Title issued the Lender's Policy to the Bank, Lawyers Title had knowledge, via the recorded Memorandum, of the Contract of Purchase and Sale pursuant to which the Bridges were entitled to the penthouse condominium. Despite this knowledge, Lawyers Title failed to note the Bridges' lien as an exception from coverage under the Lender's Policy. In light of these facts, we conclude that it would not be equitable to allow Lawyers Title to subrogate against the Defendants.
 
 III
 Unjust Enrichment
 
 14
 In the alternative, Lawyers Title contends that it should be allowed to proceed against the Defendants to prevent them from being unjustly enriched. We disagree.
 
 
 15
 Lawyers Title grounds its argument on Fidelity Nat'l Title Ins. Co. v. Miller, 264 Cal.Rptr. 17 (Ct.App.1989). In particular, Lawyers Title points to Miller's statement that:
 
 
 16
 the ultimate fact finder could reasonably determine [that] any sin by Fidelity was one of omission, while that of Miller was one of commission and one which was the genesis of the problem. Further, a court might reasonably conclude Miller's retaining the entire consideration received from Gazzo would amount to unjust enrichment. Accordingly, the court might ultimately determine those considerations tilted the balance of the equities in favor of Fidelity's right to subrogation.
 
 
 17
 264 Cal.Rptr. at 23 (quotation omitted). Lawyers Title argues that, here, its "sin" also was one of omission, and that it therefore should be allowed to subrogate against the Defendants. This argument fails because, unlike Miller, Lawyers Title's "sin" was not merely omitting the Memorandum as an exception from coverage in the Lender's Policy. Rather, Lawyers Title's "sin" was twofold. First, it conducted business with the Defendants in connection with the issuance of the Owner's Policy and learned of the Bridges' lien on the penthouse. Notwithstanding this prior lien, Lawyers Title issued the Lender's Policy insuring the Bank as the senior lienholder. As we already have concluded, the balance of the equities in this case does not tilt in favor of Lawyers Title.
 
 
 18
 Finally, Miller expressed concern that the defendant might be unjustly enriched if he were allowed to retain the entire purchase price for the property despite the diminution in the property's value caused by an easement that he had granted to a third party. 264 Cal.Rptr. at 23. Here, in contrast, Lawyers Title has not shown that the Defendants have been unjustly enriched. The Defendants received a construction loan from the Bank, and used the proceeds to construct the building. After the building was completed, they defaulted on the loan, and the Bank foreclosed. Thus, the Bank obtained the property, except for the penthouse condominium, and the Defendants retained nothing. Given these circumstances, we find that the Defendants have not been unjustly enriched, and that the district court did not err by rejecting Lawyers Title's claim for equitable relief.
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3