[Civ. No. 16515.  First Dist., Div. One.  Dec. 21, 1955.]

HAROLD T. CHINN, Appellant, v. CHINA NATIONAL AVIATION CORPORATION (a Corporation) et al., Respondents.

Kenneth C. Zwerin for Appellant.

W. Burleigh Pattee, Bruce M. Casey, Jr., and Chickering & Gregory for Respondents.

BRAY, J.—Plaintiff appeals from a judgment entered on an order sustaining demurrers to his third amended complaint.

### QUESTION PRESENTED

Does the complaint state causes of action? This depends upon whether certain regulations of plaintiff's employer constituted an offer of a unilateral contract which offer was accepted by plaintiff by continuing in employment, or were merely an offer of a gift without consideration.

## ALLEGATIONS OF COMPLAINT[1]

Plaintiff was employed by defendant China National Aviation Corporation[2] from June, 1937, to November 1, 1949, initially as a copilot, later as a captain. Prior to September 16, 1949, plaintiff had orally informed defendant of his intention to immediately terminate his employment. On September 16th, defendant enacted regulations providing the following employment benefits upon severance and termination of employment:[3]

1. Severance pay of three months' salary.

2. An additional severance pay computed at the rate of one-half month's pay for every year of service.

3. An allowance in cash for travel to the place of original employment for his wife and children under 20.

(This action was brought for the amounts of these benefits, totalling $10,622.86.)

Because of these regulations plaintiff remained in defendant's employment until November 1st (approximately 1½ months after the regulation was announced) when his employment was terminated by defendant.

## CAUSE OF ACTION—EFFECT OF THE REGULATIONS

Defendants contend, and evidently convinced the trial court, that the regulations were no more than a statement of good intentions to make a legally-unenforceable gratuity, because, they say, plaintiff gave no consideration. This, however, disregards the allegation that plaintiff, who had notified his employer of his intention to quit immediately, remained on because of these regulations, one of which would give him, on severance or termination, additional pay for additional time served.

Of late years the attitude of the courts (as well as of employers in general) is to consider regulations of this type

---

[1]Special and general demurrers of both defendants to the first two complaints and general demurrers of both defendants to the second amended complaint were sustained with leave to amend. General demurrers of both defendants to the third amended complaint were sustained without leave to amend.

[2]Defendant Civil Air Transport, Inc., some time after plaintiff's employment with the first named defendant had terminated, succeeded to all of the assets and liabilities of that corporation. Defendant China National Aviation Corporation will be referred to herein as "defendant."

[3]There are three counts, the allegations of which are identical, except each count is based on a separate regulation. Thus the first count refers only to regulation 1, the second only to regulation 2, and the third only to regulation 3.

which offer additional advantages to employees as being in effect offers of a unilateral contract which offer is accepted if the employee continues in the employment, and not as being mere offers of gifts. They make the employees more content and happier in their jobs, cause the employees to forego their rights to seek other employment, assist in avoiding labor turnover, and are considered of advantage to both the employer and the employees.

"It has become a very general policy with large employers of labor to offer a bonus or additional compensation to employees who shall render continuous and efficient service for a specified period of time. This is not a gratuity or gift, but is an offer on the part of the employer, with whom the offer originates in order to procure efficient and faithful service and continuous employment, and when the employee enters upon the service upon that inducement it becomes a supplementary contract of which he cannot be deprived without sufficient cause. [Citations.]" (*Roberts* v. *Mays Mills* (1922), 184 N.C. 406 [114 S.E. 530, 532, 28 A.L.R. 338].)

In *Bullock* v. *Sterling Drug*, 93 F.Supp. 371 (affirmed 187 F.2d 145), the plaintiff was head bookkeeper of the Jayne Corporation, whose stock was being purchased by Sterling. Sterling informed him that it contemplated no changes of personnel and that Jayne Corporation employees would become Sterling employees and entitled to the same seniority rights as if they had worked for Sterling. The plaintiff became ill and unable to work. His salary was continued by Jayne and later by Sterling. Thereafter Sterling closed the Jayne branch and discharged all employees, giving all but the plaintiff severance pay. The court held that the severance pay regulation circulated by Sterling among the Jayne employees was an offer of a unilateral contract, that the plaintiff in remaining in the employ of Sterling thereafter, even though he actually had performed no work because of illness, accepted the offer which created a contract entitling the plaintiff to payments according to the terms of the severance pay schedule. The general consideration was a benefit to Sterling in getting the Jayne employees to stay on. The particular consideration moving from the plaintiff was that his return to employment when well would be of value to Sterling.

In *Mabley & Carew Co.* v. *Borden*, 129 Ohio St. 375 [195 N.E. 697, 100 A.L.R. 511], the employer offered a death benefit to his employees who were such at time of death. This benefit was expressly stated to be voluntary and gratuitous and withdrawable at any time. It was held that the em-

ployee's acceptance and designation of beneficiary created a contract supported by sufficient consideration and enforceable on behalf of any beneficiary dying while in employ.

In *Hercules Powder Co.* v. *Brookfield*, 189 Va. 531 [53 S.E.2d 804], the employer circulated among its employees a handbook containing a section called "Dismissal Wages and Salaries" which provided dismissal pay to any eligible employee who was laid off because of reduction in force or plant shutdown. The plaintiff worked for the employer after issuance of the handbook until he was laid off because of plant shutdown. In affirming an award to the plaintiff the court said (p. 808): "Through and by compliance with the terms of the offer, plaintiff necessarily had to and did forego his right to seek and accept other employment and affirmatively met all conditions imposed by rendering services to the defendant for the period and until the specified time. Ample authority sustains the view that such a promise amounts to an offer, which if accepted by performance of the service, fulfills the legal requirements of a contract."

In *Hunter* v. *Sparling*, 87 Cal.App.2d 711 [197 P.2d 807], the employer had a plan under which an employee upon termination of his service received what the employer called "a gratuity." The plaintiff did not learn of this plan until long after his employment began. (The time when the plan was first adopted did not appear.) In our decision upholding the employee's right to such "gratuity" we referred to it as a "pension." It also could be characterized as "retirement or severance pay." We held that it was not a mere gratuity but that the adopting of the plan by the employer constituted an offer of a contract which was accepted by the employee by continuing in the employment, and that such continuance in employment constituted consideration requiring the plan's enforcement. We pointed out that the ruling in *Russell* v. *H. W. Johns-Manville Co.*, 53 Cal.App. 572 [200 P. 668], relied upon by defendants here, to the effect that similar compensation promised the employees and called a "bonus" was without consideration and unenforceable, had been explained away, distinguished or not been followed in other California cases dealing with the same subject and was out of line with the overwhelming weight of authority

*Peterson* v. *California Shipbuilding Corp.*, 80 Cal.App.2d 827 [183 P.2d 56], is not in point. There the plaintiff claimed to be entitled to certain benefits under a trust created by the employer for the employees. None of the questions raised in

our case were under consideration there. The only question before the court was whether the plaintiff's complaint showed that he was entitled to benefits under the terms of the trust. The court held that the complaint showed that none of its terms applied to him.

*Plowman* v. *Indian Refining Co.* (1937), 20 F.Supp. 1, cited by defendants, is not in point. There, on dismissal and without any previous regulation, the employees were told that because of past service thereafter they would receive a certain pension for life. The court held that the employer was not obligated to make such payment because (1) there was no authorization by the corporation employer to the officer to make the promise and no ratification thereof; (2) that past performance could not constitute consideration. "Something which has been delivered before the promise is executed, and, therefore, made without reference to it, cannot properly be legal consideration." (P. 4.) The court said (p. 5) : "In this enlightened day, I am sure, no one controverts the wisdom, justice and desirability of a policy, whether promoted and fostered by industry voluntarily or by state or federal government, looking to the promotion and assurance of financial protection of deserving employees in their old age. We have come to realize that the industry wherein the diligent worker labors for many years should bear the cost of his living in some degree of comfort through his declining years until the end of his life." The court then stated that such a policy must be created by contract of the parties. In our case, there is such contract, not based upon past services, but upon the employee accepting the offer of the contract by continuing in employment.

Defendants contend that the proper interpretation of the second benefit in the regulation, namely, upon severance and termination, the employee would receive an additional severance pay computed at the rate of one-half month's pay for every year of service, means simply that on termination the employee would receive this additional compensation, not up to the date of termination, but only up to the date of promulgation of the regulations, to wit, September 16, 1949, and that therefore there was offered neither in that regulation nor in the other two any inducement to the employee to stay on. They say that if he quit a moment after the regulations were announced he would be entitled to everything he would get were he to remain on for years, and therefore, the benefits would only constitute gifts without consideration. In the first place, such a construction of the language of the second

benefit is unnatural and unwarranted. It is clear from a reading of it that it provides for additional pay based upon years of service up to the time of termination.[4] Hence there very definitely was an inducement to the employee to remain on. Secondly, the regulations disclosed a definite plan of benefits for the employees, in effect, an offer of one contract including three benefits. The acceptance of the contract by remaining on entitled the employee to all three benefits. See *Vogel* v. *Bankers Bldg. Corp.*, 112 Cal.App.2d 160, 169 [245 P.2d 1069] : ''A single consideration may support the several counterpromises made by the other party to the transaction.'' Thirdly, it should be remembered that plaintiff did not terminate the employment. It was terminated by the employer, so that the question of what the employee's rights might have been had he left the employment a moment after the regulations were announced is academic. While, of course, there was nothing in the regulations that guaranteed the employee continued employment, and therefore the employer could terminate the employment at any time, the regulations stated the obligation of the employer upon such termination.

We deem it unnecessary to discuss the authorities cited by defendants upon the general subject of consideration. We are dealing here with the particular subject of consideration for this type of employer-employee contract and hence the authorities to be considered are those dealing with that subject. Nor do we deem it necessary in view of our holding that the complaint stated causes of action, as above outlined, to consider plaintiff's additional contention that the complaint also set forth causes of action on promissory estoppel.[5]

As the complaint stated causes of action in all three counts, the judgment is reversed and the cause remanded with directions to allow defendants time to answer the complaint.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied January 20, 1956, and respondents' petitions for a hearing by the Supreme Court were denied February 15, 1956.

---

[4] In interpreting this clause we are doing so merely for the purpose of determining whether the complaint states a cause of action. At the trial it may appear that the clause is not properly quoted in the complaint or there may be other circumstances requiring a construction of the regulations by the trial court.

[5] Nor, as no special demurrers were filed to this complaint, have we considered whether it might not have been subject to such demurrers if they had been filed.