[Civ. No. 39218. Second Dist., Div. Four. Nov. 28, 1972.]

MYRON G. NEWBERGER et al., Plaintiffs and Appellants, v.
ROBERT G. RIFKIND, as Executor, etc., et al.,
Defendants and Respondents;
CLARE M. AVNET, Intervener and Respondent.

## Counsel

Fendler & Fendler and Michael B. Wolf for Plaintiffs and Appellants.

Rifkind & Sterling, Belcher, Henzie & Biegenzahn, Robert D. Walker and Frank B. Belcher for Defendants and Respondents and for Intervener and Respondent.

## Opinion

**KINGSLEY, J.**—The five plaintiffs, appellants herein, brought three actions for declaratory relief against the executors of the estate of Robert Avnet. Plaintiffs sought a declaration as to the validity or enforceability of five stock options granted them by decedent, and plaintiffs sought damages caused by the executors' refusal to honor the options. Clare Avnet, decedent's widow, filed complaints in intervention by way of answer and denied plaintiffs' right to recover.

A nonjury trial was bifurcated on the court's own motion and a consolidated judgment on the issue of liability was entered in favor of the defendant executors and the intervener. Plaintiffs appeal.

In 1962, and for varying periods prior thereto, each of the five plaintiffs was an employee of Avnet, Inc., an electronics corporation. In 1962 Charles Avnet and his two sons, Lester and Robert, the decedent, were principal shareholders of Avnet, Inc. Charles, Lester and Robert agreed to grant stock options to the five plaintiffs individually out of their personal holdings of Avnet stock. Written option agreements in favor of each of the five plaintiffs were executed and were accepted by each plaintiff. Lester Avnet had written authority to act as agent for Robert Avnet in the execution of four of the options.

The agreements provided that the optionees might exercise their options up to 20 percent of the shares involved for each of the five years, i.e., 20 percent after the first year, 40 percent after the second year, and so on. However, the plaintiffs were not obligated to exercise their options in this manner and the entire option could be exercised as to the entire amount after the full five years.

The plaintiffs attempted to exercise their options in 1967 and remained in Avnet's employ long after that date. Each of the plaintiffs who appeared at the trial testified that he relied on his option agreement by remaining an employee of the corporation for the five-year period. Sheib, who did not appear, testified to his reliance on the option at his deposition. Several plaintiffs testified that they gave their "time" or "effort" in exchange for the option.

During the five-year period the value of the stock increased greatly. Two years after the options were granted, Robert Avnet died, and three years after his death, the plaintiffs herein attempted to exercise their options. The executors applied to the probate court for instructions on whether to honor the options. Proceedings in the probate court were dismissed without prejudice, and, in a court trial, the court found that al-

though plaintiffs had attempted to exercise their options properly, and although it was unnecessary for them to have filed creditors' claims, the exercise of the options was invalid. This judgment in favor of defendants and the intervener was based on the court's finding that the options were not supported by consideration and therefore had been revoked by the death of the grantor.

Plaintiffs' argument on appeal is that there was consideration for the options, and therefore the options were not revoked by the death of the optionor.[1]

Plaintiffs allege that in written instruments consideration is presumed (Civ. Code, § 1614; *Hamilton* v. *Abadjian* (1947) 30 Cal.2d 49 [179 P.2d 804]), that the burden is on the party attempting to invalidate the written instrument to show lack of consideration (Civ. Code, § 1615), and that defendants did not sustain their burden of showing no consideration. Defendants argue that they sustained the burden of proving that no consideration was given by plaintiffs for the options, and that plaintiffs do not show insufficiency of evidence to support the lower court's finding of no consideration.

In order to sustain their burden in the court below of showing that plaintiffs gave no consideration for the options, and in order to sustain on appeal the lower court's finding that there was no consideration, defendants rely on the fact that the record is replete with testimony that plaintiffs gave no property or money of any kind in exchange for the options.[2] Defendants' evidence that no money or property was given by the plaintiffs in exchange for the options, does not show an absence of consideration. Consideration is inherent where stock options are granted to employees and the employee continues employment knowing of the options (see, *Ellis* v. *Emhart Manufacturing Company* (1963) 150 Conn. 501 [191 A.2d 546]), and no additional consideration in money or property is required. "[A] bonus is not a gift or gratuity, but a sum paid for services, or upon a consideration or in addition to that which would ordinarily be given." (5 Fletcher Cyclopedia Corporations, § 2143, pp. 614-615.) The California case of *Hunter* v. *Sparling* (1948) 87 Cal.App.2d 711, at page 722 [197 P.2d 807], dealt with a similar problem. The *Hunter* court held that, "It is well settled in this state that, where the employer has a pension plan and

---

[1]Death of the optionor revokes an option that was given without consideration. (Civ. Code, § 1587; *Bard* v. *Kent* (1942) 19 Cal.2d 449 [122 P.2d 8, 139 A.L.R. 1032].)

[2]For example, Newberger testified that he gave no money or property (RT 27) and Mr. Sheib, in his deposition, testified that he gave no money or property (Sheib's deposition pp. 30-31), although both said they gave "time" or "effort."

the employee knows of it, continued employment constitutes consideration for the promise to pay the pension."

Furthermore, in finding consideration for pensions or other benefits, the courts do not distinguish between an inducement to continue employment and an inducement to begin employment. The court said in *Sabatini* v. *Hensley* (1958) 161 Cal.App.2d 172, at page 175 [326 P.2d 622]: "We see no distinction where, as here, the promise is made after employment but is made to an employee who has not contracted to serve for a fixed term, and for the purpose of inducing him to remain an employee. . . . Continuing an employment to which one is not bound by contract is as clearly consideration as is entering the employment in the first place." In the instant case plaintiffs testified that they gave their time or effort in reliance on the options, and no other showing of consideration was necessary.

Defendants argue that, although continued employment by plaintiffs might have been consideration *had it been bargained for,* there is no showing in the record that defendants ever requested that plaintiffs continue in employment in exchange for defendants' promise to grant the option.[3] Defendants point out that, in some of the cases relied on by plaintiffs those optionees were specifically requested to remain in employment or asked to increase their efforts, but in the instant case there was no similar request. In essence, defendants are arguing that, since there was no evidence of an express request by the optionor that the optionees either promise to continue employment, or that the optionees do the act of continuing employment, the consideration was not bargained for, and therefore there is an absence of consideration.

No express, formal request for either a promise or for an act is required for us to find a contract supported by consideration.[4] "It is the universal custom of mankind to speak elliptically and to assume the existence and the understanding of things that are not expressed in words." (3 Corbin on Contracts (1963) § 568, p. 326.)

---

[3]Defendants argue at length that the court could not consider certain testimony, including the attachments to the probate petitions in reaching its decision. Since the court said it would not consider that testimony, and since plaintiffs do not object to the court's unwillingness to consider that testimony, we do not discuss the matter in further detail.

[4]In *Eastern Woodworks* v. *Vance* (1955) 206 Md. 419 [112 A.2d 231], the court found an implied promise by an employee to render services as a consideration for an employer's promise to pay a commission. Thus, the State of Maryland treats similar facts as an offer for a bilateral contract, implying a promise by the employee. Our own state treats this situation as an offer for a unilateral contract. See *Chinn* v. *China Nat. Aviation Corp.* (1955) 138 Cal.App.2d 98, 100 [291 P.2d 91], which is discussed below.

In the case before us the bargain was implied from the circumstances, and there was an implied request by the optionors that the optionees continue the act of remaining employees in exchange for the granting of the options. No formal bargain or offer was necessary. "The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view today." (Justice Cardozo in *Wood* v. *Lucy, Lady Duff-Gordon* (1917) 222 N.Y. 88, 90-91 [118 N.E. 214].) The realities of the corporate market place lead us to believe that stock options are given to employees as an inducement to continue employment or to put forth greater efforts, and they are not granted as an act of philanthropy or as a magnanimous gesture. "The remuneration of the president and managing officers has in recent years often included bonuses, stock options and incentive compensation determined by a percentage of the net profits, in addition to a liberal salary, as a stimulus to zeal and efficient management." (5 Fletcher Cyclopedia Corporations (1967) § 2143, p. 612.)

Furthermore there are cases in other jurisdictions in which the courts found consideration for employee benefits where the employee continued employment, even though there was no evidence of formal bargain or of a formal request for continued employment.[5] In *Hercules Powder Co.* v. *Brookfield* (1949) 189 Va. 531 [53 S.E.2d 804], the employer merely sent a notice to the employees that a dismissal wage would be paid to employees who were laid off because of a reduction in the force or a shut down. The court held this to be an offer that was accepted by continuance in the service of the employer. The court also held that the continuance in service constituted consideration for the employer's offer.

The case of *Novack* v. *Bilnor Corporation* (1966) 26 App.Div.2d 572 [271 N.Y.S.2d 117], also shows the lack of necessity for an express contract. In *Novack* a letter was sent an employee that the corporation's board of directors had passed resolutions providing for payment to the employee of 2 percent of the corporation's estimated net profits for a 12-month period, provided the employee remain continuously in the corporation's employ. The letter expressly stated that the resolution was not to create a binding obligation. Although the letter did state that the employee had to continue in employment, apparently making an express offer for continued employment, the fact that the letter also said that the resolution did not create a

---

[5] While these cases did not consider the question of whether the bargain was implied, it is clear from the facts that there was no express offer. Note that in *Hercules* the dismissal wage was not to be paid to people who voluntarily terminated.

binding obligation, negated any express bargain that might have otherwise existed. Nevertheless, the court held that the resolution constituted a unilateral offer and continuing in employment constituted both the acceptance of the offer and the consideration.

In our own jurisdiction the attitude is to consider the "additional advantages to employees as being in effect offers for a unilateral contract which offer is accepted if the employee continues in the employment, and not as being mere offers of gifts. They make the employees more content and happier in their jobs, cause the employees to forego their rights to seek other employment, assist in avoiding labor turnover, and are considered of advantage to both the employer and the employees." (*Chinn* v. *China Nat. Aviation Corp., supra,* 138 Cal.App.2d 98, 100.)[6] Thus, we hold plaintiffs' act of continuing employment was both acceptance and consideration for the option, even in the absence of a formal bargain.

Defendants argue that the "part performance" resulting from the plaintiffs' continuance of service does not create a "promissory estoppel." We do not rely on the doctrine of promissory estoppel, since we hold that the offer for an option was not a gratuitous promise to make a gift, but an offer for a unilateral contract that was accepted by the act of continuing employment.

Defendants argue that in some of the cases upon which plaintiffs rely[7] there are direct requests that the employees either increase their efforts or continue employment, and therefore those cases are not good authority for plaintiffs' position here, where there are no express requests. Although, arguably, those cases involved explicit requests, nevertheless, as we have discussed in detail earlier, certain other cases which we have already discussed involved situations in which no express bargains were involved, and those courts found consideration in plaintiffs' act of continuing employment.

Defendants argue that, even if continuing in employment may be an acceptance of an offer, that acceptance is to be distinguished from consideration. As we have said earlier, several cases have held that continuing in employment was both acceptance and consideration. (See, *Novack* v.

---

[6]In *Chinn* there was no express request that plaintiff continue in employment. Plaintiff discontinued his intention to terminate employment after defendant enacted certain regulations providing for employment benefits on severance of employment.

[7]See, for example, *Sieck* v. *Hall* (1934) 139 Cal.App. 279 [34 P.2d 844], and *Gruber* v. *Chesapeake & Ohio Railway Co.* (N.D.Ohio 1957) 158 F.Supp. 593.

*Bilnor Corporation, supra,* 271 N.Y.S.2d 117, and *Hercules Powder Co.* v. *Brookfield, supra,* 189 Va. 531.)

■ Respondents argue that the cases, above discussed, which involved so-called "company" pensions and stock options—i.e., offers made by the employer to induce an employee to accept or to continue employment—are not in point here, where the offer was made by a stockholder, to an employee of a corporation. The distinction is not here material. We deal with an offer for a unilateral contract. It is well settled that the performance, in order to constitute consideration, need not move directly to the offeror. (Rest., Law Contracts (1932) § 75(2).) Where as the record here indicates, such a stockholder deems it to be for his benefit that key employees remain in the service of the corporation, he receives consideration by that performance.

Defendants argue that plaintiffs were required to file a creditor's claim under Probate Code, section 707, and that their failure to do so bars them from recovery. Probate Code, section 707, reads in part as follows: " . . . all claims arising upon contract, whether they are due, not due, or contingent, . . . must be filed or presented within the time limited in the notice . . . and any claim not so filed or presented is barred forever . . . ." The word "claim" in the Probate Code "only has reference to such debts or demands against the decedent as might have been enforced against him in his lifetime by personal actions for the recovery of money, and upon which only a money judgment could have been rendered." (*Fallon* v. *Butler* (1862) 21 Cal. 24, 32.) *Erickson* v. *Boothe* (1947) 79 Cal. App.2d 266, 276-277 [179 P.2d 611], is in point. That case held that a claim to renew or extend a lease under an option clause did not constitute a claim within the meaning of Probate Code, section 707.

■ In the case before us, plaintiffs sought to exercise their options three years after the optionor's death, and it was only after those options were not honored that plaintiffs sought damages as an alternative to specific performance. The cause of action in the case at bench did not arise until three years after the death of the optionor, because it was not until that time that plaintiffs' attempts to exercise the options were rejected. In *Sperry* v. *Tammany* (1951) 106 Cal.App.2d 694, at page 698 [235 P.2d 847], the court said: "Since the indebtedness was not incurred by decedent in her lifetime it was a matter to be adjusted between defendant and the executor of her estate and the filing of a claim was not required. When a

liability arises after the death of the decedent it does not constitute a claim against the estate which is required to be presented for allowance . . . ."

The judgment is reversed.

Jefferson, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied December 12, 1972, and the petition of the defendants and respondents for a hearing by the Supreme Court was denied January 24, 1973.