[Civ. No. 53202. Second Dist., Div. Five. Nov. 27, 1978.]

ROBERT E. HEPP, Plaintiff and Appellant, v.
LOCKHEED-CALIFORNIA COMPANY, Defendant and Respondent.

**COUNSEL**

Thomas B. Barsam for Plaintiff and Appellant.

Chase, Rotchford, Drukker & Bogust and W. Michael Hartman for Defendant and Respondent.

**OPINION**

ASHBY, J.—Plaintiff Hepp brought this action against his former employer, defendant Lockheed California Company, for breach of contract and fraud. The trial court dismissed the action after granting defendant's motion for summary judgment. Plaintiff appeals.

Plaintiff was employed by defendant as a "Procurement Price Cost Administrator, Labor Grade 7," a position which was salaried and nonrepresented, being considered a part of management. He had worked for over nine years in the procurement department, a department in which it was understood that an employee had a likelihood of being "surplused." On February 1, 1974, plaintiff's group was "surplused" and he was "laid off suitable for rehire." He was informed that the layoff certainly had nothing to do with the quality of his work but was simply a matter of having to surplus so many people, and that he should not forget Lockheed because he would be recalled from layoff.

According to plaintiff's declaration, defendant had a well-established policy that when a job opening occurred, it must be offered to those persons who within two years had been laid off suitable for rehire and who were qualified for the position, before it could be filled by promotion or transfer within the company or by a new employee. Furthermore, according to plaintiff's declaration, a laid off employee was considered qualified if he had ever held that classification.

During the two-year period following plaintiff's layoff, while plaintiff was available for rehire and had made this known to defendant, there

occurred six openings for procurement price cost administrator for which plaintiff was qualified. Without contacting plaintiff, and in violation of the above policy, defendant filled these openings by three promotions within the company, one transfer within the company, and two new hires.

*Defendant concedes for purposes of its motion for summary judgment and this appeal, that defendant's "rules and/or policies are as Plaintiff states," and that defendant "did violate its own policies and/or rules."* (Italics added.) Defendant successfully argued below, and reiterates here, that this violation is irrelevant because these rules "are not contracts to which Lockheed's management is bound. They are merely statements of general policy . . . not designed for the benefit of the employees of Lockheed but rather . . . designed to provide guidelines which will assist management of Lockheed in the exercise of their managerial functions." These policies, argues defendant, are not a part of plaintiff's employment contract because they are not intended for his benefit and he did not give consideration for them.[1]

The trial court, relying upon the authorities cited by defendant, concluded that defendant's rehiring policies are "directives to assist supervision. They are not nor can they be considered contracts nor can it be said that by having such general policies that they are specifically and expressly made for the individual employee's benefit within each employment contract." ▮ We hold that the trial court erred in granting summary judgment for defendant.

▮ Summary judgment is granted when all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c.) It is a drastic remedy eliminating trial and therefore the moving party's declarations must be strictly construed and the opposing party's declaration liberally construed. (*Brandlin* v. *Belcher,* 67 Cal.App.3d 997, 999 [134 Cal.Rptr. 1].) If there is any issue of material fact to be tried, summary judgment must be denied. (*D. E. Sanford Co.* v. *Cory Glass etc. Co.,* 85 Cal.App.2d 724, 726 [194 P.2d 127].) Summary

[1]Defendant quotes *Beverage Distributors, Inc.* v. *Olympia Brewing Co.* (9th Cir. 1971) 440 F.2d 21, 29, for the statement that "[a] gratuitous and unsolicited statement of policy or of intention which receives the concurrence of the party to whom it is addressed, does not constitute a contract"; and also cites *Ferreyra* v. *E. & J. Gallo Winery,* 231 Cal.App.2d 426, 430-432 [41 Cal.Rptr. 819], and *Levy* v. *Bellmar Enterprises,* 241 Cal.App.2d 686, 690-692 [50 Cal.Rptr. 842], for the proposition that an at-will employment contract does not become a termination-for-cause contract in the absence of bargained-for consideration other than the performance of the services required by the contract itself.

judgment may not be granted by the court based on inferences reasonably deducible from the papers submitted, if such inferences are contradicted by other inferences which raise a triable issue of fact. (Code Civ. Proc., § 437c; 4 Witkin, Cal. Procedure (2d ed. 1971, 1977 pocket supp.) Proceedings Without Trial, § 196A, p. 35.)

In this case the conclusion that the policies involved were management guidelines only and not intended for the benefit of the employees is a factual inference, supported by the language of the management memos contained in the moving papers.[2] ▪ However, the contrary factual inference, that the policy was intended to benefit employees, could also be drawn from the circumstances, and therefore the trial court erred in resolving that factual issue without a trial.

In *Newberger* v. *Rifkind,* 28 Cal.App.3d 1070 [104 Cal.Rptr. 663, 57 A.L.R.3d 1232], the question was whether the employees had given "consideration" for stock options which had been granted by the employer, so that the stock options would not be revoked by the death of the grantor. The defendant argued there was no evidence that the employees had specifically been asked to continue employment in consideration for the stock options. The court held, "In the case before us the bargain was implied from the circumstances, and there was an implied request by the optionors that the optionees continue the act of remaining employees in exchange for the granting of the options. . . . The realities of the corporate market place lead us to believe that stock

[2]"Lockheed Industrial Relations Directive Number: 1, Revision: 7," stated in part, "The Industrial Relations Directives are issued under the authority of Management Directive Number 1 and are designed to provide information for all supervision on Industrial Relations matters. [¶] These directives provide a useful reference for all levels of management and should assist supervision in their responsibility for reaching consistent and constructive decisions on industrial relations problems within their own organizations."

"Lockheed Industrial Relations Directive Number 2-A, Revision: 2," relating to "Surplus and Recall of Salaried Nonrepresented Employees" provided in pertinent part that there was a policy "[i]n the event of reduction or build-up of the salaried nonrepresented workforce, to retain or recall those employees who are best qualified to perform the work available without regard to race, creed, color, national origin, sex or age. . . . The general policy in recalling salaried nonrepresented surpluses or downgrades is to recall on a last-out/first-back basis, providing such employees are qualified to perform the work available. In the event there are several laid-off or downgraded employees in the classification who are capable of performing the work available, then the placement decision should consider recency of layoff together with seniority date." This memo also stated "Salaried Personnel Relations representative will coordinate with line management in the selection of a candidate if a suitable candidate is on layoff/downgrade status or can otherwise be found among active employees. If no such suitable candidate is available, the requisition will be released to Employment for open hire."

options are given to employees as an inducement to continue employment or to put forth greater efforts, and they are not granted as an act of philanthropy or as a magnanimous gesture." (*Id.,* at p. 1075.)

In *Chinn* v. *China Nat. Aviation Corp.,* 138 Cal.App.2d 98 [291 P.2d 91], the employer enacted regulations providing severance benefits to employees terminating employment. In response to the defendant's argument that the "regulations were no more than a statement of good intentions" given without consideration, the court stated: "Of late years the attitude of the courts (as well as of employers in general) is to consider regulations of this type which offer additional advantages to employees as being in effect offers of a unilateral contract which offer is accepted if the employee continues in the employment, and not as being mere offers of gifts. They make the employees more content and happier in their jobs, cause the employees to forego their rights to seek other employment, assist in avoiding labor turnover, and are considered of advantage to both the employer and the employees." (*Id.,* at pp. 99-100.)

In this case the inference may likewise be drawn from the circumstances of the parties that the rehiring policy was not merely a guideline for the benefit of management but a positive inducement for employees to take and continue employment with defendant. The fluctuation of employment levels in the aerospace industry is a matter of common knowledge. An employee might well be induced to take employment with defendant in spite of the risk of periodic layoff if the employee knows he will be given preference in rehiring when openings in his former classification occur as economic conditions change. Based on *Newberger* and *Chinn,* the trial court could reasonably have drawn the inference that defendant's policy was intended to be of benefit and inducement to the employees. The court should have found that there was a triable issue of fact as to the intent of the regulations, and should therefore have denied the motion for summary judgment.

Defendant's alternative argument that there was no consideration for such benefit as a matter of law, is likewise without merit. Similar arguments were rejected in *Newberger, supra,* and *Chinn, supra,* and in *Hunter* v. *Sparling,* 87 Cal.App.2d 711, 722 [197 P.2d 807], involving a pension, where the court stated: "It is well settled in this state that, where the employer has a pension plan and the employee knows of it, continued employment constitutes consideration for the promise to pay the pension." Under such reasoning there was a triable issue of fact whether plaintiff gave consideration by continuing employment in reliance on

defendant's policy. Plaintiff's declaration stated that he was well informed of this policy and relied upon it.

Defendant's argument that plaintiff had an employment contract which was terminable at will and without cause (Lab. Code, § 2922) misses the mark. Plaintiff was not fired; he was laid off suitable for rehire, and retained such rights as the employer had granted to persons in that category. (*Austin* v. *Southern Pacific Co.*, 50 Cal.App.2d 292, 294 [123 P.2d 39].)[3]

The judgment of dismissal is reversed.

Stephens, Acting P. J., and Hastings, J., concurred.

---

[3]It bears reiteration that defendant conceded only for purposes of the motion and appeal that its policies were as stated by plaintiff. Defendant might still prove at trial that the policy was not as strict as implied by plaintiff or that plaintiff was not considered qualified for the positions.