141 F.3d 1174
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
David CANNON, Plaintiff-Appellant,
v.
NEW UNITED MOTORS MANUFACTURING, INC., Defendant-Appellee.
 No. 96-16569.
D.C. No. C-93-3487 MHP.
 United States Court of Appeals, Ninth Circuit.
 Decided February 11, 1998.
Argued and Submitted December 10, 1997.
 
 1
 Appeal from the United States District Court for the Northern District of California Marilyn Hall Patel, District Judge, Presiding.
 
 
 2
 Before TASHIMA and D.W. NELSON, Circuit Judges, and ZILLY, District Judge.**
 
 
 3
 MEMORANDUM*
 
 
 4
 Appellant Cannon, an African-American man, was promoted from a production job to an associate buyer position and then a buyer position in the purchasing department of his employer, appellee New United Motors Manufacturing, Inc. ("NUMMI"). Ultimately, he was removed from the buyer position and returned to a production position. Based on his removal from the buyer position, Cannon sued NUMMI for racial discrimination, for violation of public policy, and for breach of contract and covenant of good faith and fair dealing. The case does not involve wrongful termination. The District Court granted summary judgment to NUMMI on all of Cannon's claims. Cannon appeals the District Court's judgment. We affirm.
 
 I. JURISDICTION
 
 5
 The District Court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331(a) and 1343(1)-(4) and 42 U.S.C. §§ 1981 and 2000e. This Court has jurisdiction over the final judgment of the District Court pursuant to Fed.R.Civ.P. 54(a) and 28 U.S.C. § 1291.
 
 II. FACTUAL AND PROCEDURAL BACKGROUND
 
 6
 Appellee NUMMI is a joint venture between Toyota Motor Corporation and General Motors Corporation for the production of automobiles and light trucks. NUMMI is located in Fremont, California. Appellee's Supplemental Excerpts of Record ("SER"), at 328, (Joint Statement of Undisputed Material Facts ("JSUMF")), p 2.
 
 
 7
 On or about October 28, 1986, NUMMI hired appellant David Cannon, an African-American man, as a production team member in the assembly section of NUMMI's Fremont plant. In April of 1988, NUMMI transferred Cannon to the stamping section of the plant.
 
 
 8
 In May of 1988, Cannon was promoted to the position of associate buyer. Cannon claims that although he was promised training, he received very little training. Appellant's Excerpts of Record ("ER"), at 119:19-28, 120:1-3, 130. Nevertheless, as an associate buyer, Cannon had three positive performance reviews in 1989 and 1990. ER at 131-138.
 
 
 9
 In August of 1990, Linda McColgan was reassigned as Cannon's new manager. Cannon claims that from her first day as Cannon's manager, McColgan was very hostile toward Cannon. In September, Cannon became aware of a confidential memorandum in which McColgan accused appellant of being incompetent and having a poor work attitude. ER at 121:27-28, 139-43.
 
 
 10
 Nevertheless, on October 1, 1990, NUMMI promoted appellant to Specialist I, which is a buyer position in the purchasing department. ER at 122:14-15. When Cannon was promoted to the buyer position, Linda McColgan provided a plan of expectations for his work activity for the last quarter of 1990. SER (JSUMF) at 332, p 21. On June 23, 1991, Cannon received his first performance review as a Specialist I Buyer. ER at 70-71. While this performance review gave Cannon an "acceptable" rating, the review indicated that Cannon needed to improve in various areas.
 
 
 11
 Between July and November of 1991, Cannon was supervised by Assistant Manager Rosemary White Yoshikawa. At McColgan's request, Yoshikawa kept notes regarding Cannon's work. SER (JSUMF) at 333, pp 24-25. In December of 1991, Assistant Manager Bill Wentworth supervised Cannon. Wentworth also kept notes regarding Cannon and discussed with McColgan problems with Cannon's work. SER (JSUMF) at 333, pp 26-27. McColgan discussed concerns about Cannon's performance with the Manager of Human Resources, Jim Birch. SER (JSUMF) at 334, p 28. Beginning in March of 1992, Birch spoke several times with Cannon, discussing with Cannon possible transfers and urging him to return to his position as a production worker in the stamping department. SER (JSUMF) at 333, p 29. Birch also discussed Cannon's situation with his manager, D.W. Childs, the Vice-president of Human Resources. SER (JSUMF) at 333, p 30.
 
 
 12
 On September 9, 1992, Cannon received a performance review from McColgan. This performance review rated Cannon's performance as "unacceptable." ER at 77-78, 149-150. On September 22, 1992, appellant was involuntarily removed from his position as Specialist I Buyer and placed back in the stamping department to resume manual labor. ER at 126:14-17. Based on his hourly rate, Cannon's new job in the stamping department paid him approximately $4,500 per year more in base salary than he was earning as a buyer in the purchasing department.
 
 
 13
 Also in September of 1992, after receiving his performance rating of unacceptable and before being returned to the stamping department, Cannon attended a luncheon for NUMMI employees. According to Cannon, at this luncheon, McColgan made fun of and humiliated the buyers under her supervision and gave Cannon a can of Play-Doh with the work "spook" handwritten on the side of the can. ER at 125:16-21.
 
 
 14
 On September 21, 1993, Cannon filed his complaint. ER at 1-9. On October 25, 1993, NUMMI filed its answer. ER at 10-13. On June 1, 1994, Cannon moved to file an amended complaint. NUMMI opposed this motion. Nevertheless, on November 21, 1994, the District Court granted Cannon leave to file his amended complaint.[1] In his complaints, Cannon alleges four causes of action: (1) & (2) two claims for racial discrimination in violation of 42 U.S.C. § 1981, Title VII, 42 U.S.C. § 2000e, and California Government Code Section 12490; (3) racial discrimination in violation of public policy; and (4) breach of employment contract and covenant of good faith and fair dealing.
 
 
 15
 The District Court granted summary judgment in favor of NUMMI on all of Cannon's claims.
 
 III. STANDARD OF REVIEW
 
 16
 A grant of summary judgment is reviewed de novo. Fazio v. City and County of San Francisco, 125 F.3d 1328, 1330 (9th Cir.1997). This Court's review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). Ghotra v. Bandila Shipping, Inc., 113 F.3d 1050, 1054 (9th Cir.1997). This Court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court applied the relevant substantive law. Fazio, 125 F.3d at 1331. The record below must be examined to determine whether there is any basis for affirmance. Lowe v. City of Monrovia, 775 F.2d 998, 1007 (9th Cir.1965), amended by, 784 F.2d 1407 (9th Cir.1986). If the result reached by the district court is correct, this Court must affirm, even if the district court relied on an erroneous ground. Id.
 
 IV. DISCUSSION
 A. Summary Judgment Standard
 
 17
 Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A principal purpose of the summary judgment procedure is to identify and to dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
 
 B. Cannon's Racial Discrimination Claims
 1. The Prima Facie Case and Pretext
 
 18
 Plaintiff claims that he was removed from his position as a buyer because of his race. To prevail on a claim of disparate treatment based on race, a plaintiff must prove his employer's challenged decision was motivated by intentional discrimination. Washington v.. Garrett, 10 F.3d 1421, 1431-32 (9th Cir.1993). Because in most employment discrimination cases direct evidence of discriminatory motive is unavailable or difficult to obtain, the Supreme Court has set forth an indirect method of proof which relies on presumptions and shifting burdens of production. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under this framework, a plaintiff opposing summary judgment on his disparate treatment claim carries the initial burden of establishing a prima facie case of employment discrimination. Garrett, 10 F.3d at 1432. By establishing a prima facie case, the plaintiff raises a presumption that the employer engaged in intentional discrimination. Burdine, 450 U.S. at 254. The burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the plaintiff's termination. Id. at 253.[2] If the employer carries its burden, the presumption of discrimination "simply drops out of the picture." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The plaintiff must then raise a genuine factual issue as to whether the articulated reason was pretextual. Garrett, 10 F.3d at 1432. "If [the] plaintiff succeeds in raising a genuine factual issue regarding the authenticity of the employer's stated motive, summary judgment is inappropriate, because it is for the trier of fact to decide which story is to be believed." Id.
 
 
 19
 a. Prima Facie Case
 
 
 20
 The requisite degree of proof necessary to establish a prima facie case for Title VII claims on summary judgment "is minimal and does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.1994). The plaintiff need only offer evidence "which gives rise to an inference of unlawful discrimination." Id. The amount of evidence that must be produced in order to establish a prima facie case is "very little." Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1111 (9th Cir.1991).
 
 
 21
 As direct evidence of discrimination, Cannon points to the incident where McColgan gave him a can of Play-Doh with a racial epithet written on it. Cannon further asserts as direct evidence of discrimination his allegations that he was rarely allowed to travel and that he was given menial tasks and inadequate training.
 
 
 22
 While NUMMI disputes the facts surrounding the Play-Doh incident, one isolated act of this nature is insufficient to show discriminatory intent. Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438-39 (9th Cir.1990) (citing Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 314-16 (6th Cir.1989) (finding that a "single, isolated discriminatory comment" by plaintiff's immediate supervisor was insufficient to trigger burden shift or to avoid summary judgment for defendant).
 
 
 23
 Nor are Cannon's allegations that he was rarely permitted to travel, that he was assigned menial tasks, and that he was inadequately trained sufficient to establish direct evidence of racial discrimination. Cannon states in his declaration that he "was always assigned the least desirable tasks which none of the other Associate Buyers wanted" and that he "was rarely taken around or permitted to make trips to vendors to familiarize himself with the job of Buyer as previous Associate Buyers had been allowed to do." ER at 120:17-21. These statements, however are conclusory allegations; Cannon provides no specific examples to back up these statements.
 
 
 24
 Further, the evidence in the record indicates that Cannon was given adequate training opportunities, indeed, that he was given the same training opportunities as other NUMMI employees. The parties do not dispute that Cannon learned his duties on the job. SER (JSUMF) at 332, p 19. Nor is it disputed that in the purchasing department, each employee is expected to take the initiative to take classes as needed. SER (JSUMF) at 331, p 17. The parties further do not dispute that Cannon took classes while an associate buyer and buyer. ER at 65-68; SER (JSUMF) at 331-32, p 18. In fact, records submitted by NUMMI indicate that Cannon took a similar number of classes as the other NUMMI employees in his department. ER at 65. This evidence conflicts with Cannon's conclusory allegations that he was not given adequate training opportunities. As such, Cannon's attempt to provide direct evidence of racial discrimination fails.
 
 
 25
 In McDonnell Douglas, 411 U.S. at 802, reaffirmed and clarified by St. Mary's, 509 U.S. at 506, the Supreme Court established the framework for a Title VII plaintiff to use circumstantial evidence to state a prima facie case in the context of a discrimination-in-hiring case:
 
 
 26
 This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.
 
 
 27
 The Court recognized in McDonnell Douglas that these standards are flexible and adaptable to different factual circumstances. In the context of discriminatory discharge (or, as here, a removal from a position), a plaintiff may establish a prima facie case of discrimination by showing (1) that he was in the protected class, (2) that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, and (3) that his employer sought a replacement with qualifications similar to his own, thus demonstrating a continued need for the same services and skills. Sengupta v. Morrison-Knudsen Co., Inc., 804 F.2d 1072, 1075 (9th Cir.1986). "Without the demonstration of a need for the same services and skills that [the plaintiff] possessed, the conceptual underpinnings of McDonnell Douglas crumble." Id.
 
 
 28
 It is not disputed that Cannon is African-American and was removed from his buyer position by NUMMI, thereby satisfying those elements of a prima facie case.
 
 
 29
 As to the second element, NUMMI argues that Cannon was not doing his job well enough to rule out the possibility that he was fired for inadequate job performance. Cannon disputes that he had performance problems. To support his argument that he did not have performance problems, Cannon points to his satisfactory performance reviews as an associate buyer and to supportive declarations from NUMMI suppliers. ER at 131-38, 155-58. Cannon can also point to his first performance review as a buyer, wherein he received a rating of acceptable. ER at 71-72. In light of Mr. Cannon's minimal burden the Court can treat this element as satisfied and consider defendants' evidence of poor performance in the context of pretext.
 
 
 30
 As to the last element, Mr. Cannon states that he was replaced by other employees not of his race. However, Cannon has offered no evidence concerning NUMMI's efforts to replace him and the Court is unable to find any evidence in the record identifying the person who replaced Mr. Cannon. For this reason alone, plaintiff has failed to establish a prima facie case.
 
 
 31
 Even assuming, however, that Mr. Cannon has established a minimal prima facie case, he would still have to show that NUMMI's reasons for removing him from his buyer position were pretextual. He has failed to do so.
 
 
 32
 b. Pretext
 
 
 33
 NUMMI maintains that Mr. Cannon was removed from his position as a buyer because Human Resources believed such action was appropriate in light of Cannon's unacceptable performance. NUMMI's evidence that Cannon's work was deficient includes: (1) McColgan's notes that Cannon had a poor work attitude and did not take initiative to understand the breakdown of price quotations submitted by suppliers, ER at 53-54; (2) the work plan that McColgan developed for Cannon in 1990, ER at 68-69; (3) McColgan's 1991 performance review of Cannon, wherein she discussed with Cannon several areas of needed improvement, ER at 70-71; (4) Assistant Manager Yoshikawa's notes, wherein she indicates frustration in dealing with Cannon's lack of analytical skills and failure of oral and written communication, ER at 56-57, 73-76; (5) Assistant Manager Wentworth's notes that Cannon was unwilling to follow directions and to provide information, ER at 111-12, 114-15. Based on this evidence, the Court concludes that NUMMI has successfully articulated a legitimate, nondiscriminatory reason for Mr. Cannon's removal from his position as a buyer. Accordingly, any presumption of discrimination is successfully rebutted and dropped from the case. Burdine, 450 U.S. at 255 and n. 10, 101 S.Ct. 1094-95, 67 L.Ed.2d at 216. To avoid summary judgment, the burden now shifts back to Mr. Cannon to produce "specific, substantial evidence" that NUMMI's proffered reason was pretext and that race discrimination was the true reason for his removal from his position as a buyer. See Wallis, 26 F.3d at 890.
 
 
 34
 Plaintiff Cannon responds that the evidence establishes that he was more than adequately performing his duties as a buyer. To support his argument that he did not have performance problems, Cannon points to his satisfactory performance reviews as an associate buyer and to supportive declarations from NUMMI suppliers. ER at 131-38, 155-58. Cannon also points to his first performance review as a buyer, wherein he received a rating of acceptable. ER at 71-72. These items are insufficient, however, to establish that Cannon was adequately performing his duties as a buyer. His satisfactory performance reviews as an associate buyer do not establish that he adequately performed as a buyer. Supportive declarations from NUMMI suppliers are only evidence that the suppliers liked his performance; such declarations do not establish that Cannon was performing adequately by NUMMI standards. Further, even though Cannon received an acceptable rating in his first performance review as a buyer, that review also contained many suggestions regarding areas in which Cannon needed to improve his performance.
 
 
 35
 Cannon further alleges that he was not apprised of the problems with his work. With respect to this claim, NUMMI submits evidence, undisputed by Cannon that: (1) McColgan made a highly specific plan for Cannon's work activity when he was promoted to buyer, ER at 68-69, SER (JSUMF) at 332, p 21; (2) McColgan discussed Cannon's June 1991 performance review wherein several areas of needed improvement are noted, ER at 70-71, SER (JSUMF) at 332-33, p 23; and (3) Birch discussed with Cannon possible transfers to other departments, SER (JSUMF) at 334, p 29.
 
 2. Benevolent Racial Discrimination
 
 36
 Appellant Cannon asserts that NUMMI promoted Cannon only for affirmative action reasons, did not give him the opportunities necessary to succeed in the Buyer position, and never told Cannon that his job was in jeopardy. Cannon argues it is discriminatory for an employer to fail to objectively critique its African-American employees because it fears accusations of racial discrimination. This failure deprives the employee of an opportunity to learn of his shortcomings and improve upon them. Cannon asserts that for the employer to then terminate the employee because it is dissatisfied with his job performance is racial discrimination. To support this argument, Cannon relies on Vaughn v. Edel, 918 F.2d 517 (5th Cir .1990) (holding that employer's failure to counsel and to criticize attorney because she was black was discrimination under Title VII).
 
 
 37
 Vaughn is distinguishable, however, from the present case. In Vaughn the plaintiff presented direct evidence of discrimination. Specifically, the manager of plaintiff's employer testified that he told plaintiff's supervisors not to confront her about her work. Id. at 521. A magistrate found that the manager acted as he did because Vaughn was black, and, if Vaughn had been white, the employer would have both criticized and counseled her. Id. at 523. Because the employer's behavior was racially motivated, the Court found that the employer had violated Title VII. Id.
 
 
 38
 In the present case, in contrast, Cannon offers no evidence, beyond his own conclusory allegations, that NUMMI did not objectively criticize him because of his race. Furthermore, while Cannon claims that he was not apprised of the problems with his work, NUMMI submits evidence, undisputed by Cannon, to the contrary.
 
 
 39
 C. Cannon's Claims for Violation of Public Policy and for Breach of Employment Contract
 
 
 40
 Cannon further asserts that the District Court erred in granting summary judgment in favor of NUMMI because the District Court failed to address all of the causes of action in Cannon's complaint. In particular, Cannon asserts that both NUMMI and the District Court ignored Cannon's fourth cause of action for breach of employment contract and covenant of good faith and fair dealing (the "breach of contract" claim). As a preliminary matter, Cannon is incorrect in asserting that NUMMI failed to address any of Cannon's causes of action. Defendant's memorandum of points and authorities in support of motion for summary judgment did address all of Cannon's claims, albeit only summarily. SER (JSUMF) at 340-55. Also, while it might have been preferable for the District Court to have been more explicit in its discussion of Cannon's claims for violation of public policy and for breach of contract, this Court can affirm a summary judgment "on any ground supported by the record, provided the parties have had the opportunity to discuss it in their briefs." Scholar v. Pacific Bell, 963 F.2d 264 (9th Cir.) (quoting Paskaly v. Seale, 506 F.2d 1209, 1211 n. 4 (9th Cir.1974)), cert. denied, 506 U.S. 868, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992); see also Jewel Cos. v. Pay Less Drug Stores Northwest, Inc., 741 F.2d 1555 (9th Cir.1984). Here, the parties have addressed Cannon's breach of contract claim in their briefs.
 
 
 41
 1. Breach of Employment Contract and Covenant of Good Faith and Fair Dealing
 
 
 42
 Cannon partially bases his argument that summary judgment was improperly granted in favor of NUMMI on his breach of contract claim on the grounds that NUMMI completely ignored Cannon's cause of action for breach of contract. In fact, NUMMI, in its memorandum in support of its motion for summary judgment mentions Cannon's breach of contract claim in two places: (1) NUMMI's statement of the case; and (2) footnote 11, wherein NUMMI argued that because the basis for Cannon's breach of contract claim was based on the same race discrimination alleged to violate Title VII and § 1981, summary judgment on Cannon's federal claims required summary judgment on his state claims. This footnote was sufficient to place Cannon on notice that he had a burden to assert his argument that his breach of contract claim was based on more than racial discrimination--i.e. failure to train, lack of good cause to remove him from the buyer position, and failure to follow company policy. In his memorandum in opposition to NUMMI's motion for summary judgment, however, Cannon failed to challenge this portion of the motion for summary judgment.[3]
 
 
 43
 Even if Cannon had asserted any of these bases, summary judgment in favor of NUMMI would still have been appropriate. In his amended complaint, Cannon bases his claim for breach of contract on (1) the alleged racial discrimination, ER at 23[4]; (2) NUMMI's failure to provide plaintiff with promised proper training, ER at 23; and (3) NUMMI's failure to utilize progressive discipline and failure to generate a plan that would assist Cannon in improving his performance, despite company policy requiring it to do so, ER at 23-24. In his opening brief, Cannon further alleges that there is an issue as to whether NUMMI had good cause to remove appellant from his position as a buyer.
 
 
 44
 Cannon argues that NUMMI's promises and policies created a contractual obligation that was breached when NUMMI did not fulfill its promises or follow its policies, citing Foley v. Interactive Data Corp., 47 Cal.3d 654, 681-82, 254 Cal.Rptr. 211, 675 P.2d 373 (1988); Burton v. Security Pacific Nat'l Bank, 197 Cal.App.3d 972, 978, 243 Cal.Rptr. 277 (1988); Hepp v. Lockheed-California Co., 86 Cal.App.3d 714, 719, 150 Cal.Rptr. 408 (1978).
 
 
 45
 Cannon's breach of contract claim is based on California law. In California, implied contract terms may arise from the employer's official and unofficial policies and practices. Scott v. Pacific Gas and Elec. Co., 11 Cal.4th 454, 464, 46 Cal.Rptr.2d 427, 904 P.2d 834 (1995). Whether the parties conduct creates an implied agreement under California is generally a question of fact. Foley, 47 Cal.3d at 677, 254 Cal.Rptr. 211, 765 P.2d 373. In Scott, the evidence supporting the implied contract at issue was compelling. The employer in Scott had adopted a detailed system of discipline that was to apply to all employees, the discipline system was known to the employees, and there was testimony from one of the managers that the company would follow its own human resources policy. As a final matter, the Scott Court found that there was evidence that the employer had breached the contract.
 
 
 46
 To the extent that Cannon bases his claim for breach of contract on NUMMI's failure to provide plaintiff with promised proper training and lack of good cause to remove him from his buyer position, even if Cannon could prove the existence of any implied contract regarding these matters, he cannot prove breach. The parties do not dispute that Cannon learned his duties on the job, that purchasing department employees are expected to take the initiative to take classes as needed, and that Cannon took classes while an associate buyer and buyer. SER (JSUMF) at 331-32, pp 17-19. Therefore, plaintiff cannot premise his claim for breach of contract on an allegation that NUMMI promised training and then failed to provide proper training. Further, NUMMI had good cause (unacceptable work performance) to remove Cannon from the buyer position.
 
 
 47
 Cannon's final argument to support his breach of contract claim is his assertion that NUMMI failed to follow company policy that required it to utilize progressive discipline and to generate a corrective action plan that would assist Cannon in improving his performance before he was removed. ER at 23-24. In his declaration in support of his opposition to NUMMI's motion for summary judgment, Cannon discusses his allegation that NUMMI breached its management performance obligation and refers to an attached exhibit, incorporating that exhibit by reference. ER at 127. The attached exhibit Cannon refers to is a written statement of NUMMI's policy for performance management. ER at 153-54. This written policy specifically states with regard to managing performance problems:
 
 
 48
 A team member whose Summary Performance Rating is Unacceptable must either improve job performance to a satisfactory level, be placed in a position in which satisfactory performance can be attained, or separated. However, the principal objective in dealing with performance problem situations is to assist a team member in bringing job performance to an acceptable level.
 
 
 49
 ER at 154. To the extent that NUMMI did place Cannon in a position in which Cannon could satisfactorily perform, NUMMI did not breach its written policy and Cannon's claim for breach of contract fails.
 
 
 50
 Cannon contends, however, that placing him in a position in which he could satisfactorily perform was not sufficient to satisfy NUMMI's policy. To support this contention, Cannon argues that NUMMI's unwritten policy was that NUMMI would give the employee an opportunity to improve job performance after receiving an unacceptable performance rating. To support this argument, Cannon quotes deposition testimony of Bill Childs, NUMMI's Vice-president and General Manager of Human Resources. In this deposition testimony, Childs indicated that before NUMMI would remove a person from a position, NUMMI would give the person a performance review indicating that person's performance was inadequate and would attempt to give the employee an opportunity to correct the problem. ER at 235:15-239:22. Cannon does not, however, allege that he or any other employee reasonably relied Childs' version of NUMMI's management policy. Further, while NUMMI apparently communicated its written performance management policy to its employees, Cannon does not allege that NUMMI ever communicated Childs' version of the policy to NUMMI's employees. Nor does Cannon assert that NUMMI's practice was to always give an employee an opportunity to improve after receiving an unacceptable performance rating. Without evidence of reasonable reliance on the policy as stated by Childs, Cannon cannot base his breach of contract claim on this unwritten version of NUMMI's policy. Further, even if the unwritten policy, as stated by Childs, were NUMMI's policy, Cannon still could not establish that NUMMI breached the policy.
 
 
 51
 Although, the District Court mentions Cannon's breach of contract claim, without addressing it directly, this Court can affirm a summary judgment on any ground supported by the record, provided the parties have had the opportunity to discuss it in their briefs. Here, the parties have discussed Cannon's breach of contract claim in their briefs. Cannon has not provided evidence that NUMMI breached any employment contract.
 
 2. Violation of Public Policy
 
 52
 Cannon's claim for violation of public policy is based on the same set of operative facts which give rise to his racial discrimination claims. ER at 22. In his complaint, Cannon stated that NUMMI violated established public policy by basing its employment decision to remove Cannon from the buyer position on the basis of his race. Summary judgment is also proper on Cannon's claim for violation of public policy. DeHorney v. Bank of America Nat'l Trust & Sav. Ass'n, 879 F.2d 459, 465 (9th Cir.1989) (finding that plaintiff's failure to make a prima facie case of racial discrimination disposes of claim for violation of public policy).
 
 V. CONCLUSION
 
 53
 For the foregoing reasons, the District Court's grant of summary judgment in favor of NUMMI on all of Cannon's claims is AFFIRMED.
 
 
 
 **
 The Honorable Thomas Zilly, United States District Judge for the Western District of Washington, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 At oral argument before this Court, NUMMI asserted that Cannon's amended complaint was never filed. While the District Court docket sheet shows that the amended complaint was received by the District Court, the docket sheet does not reflect that the first amended complaint was ever docketed. Nevertheless, the fact that NUMMI opposed Cannon's motion to file a first amended complaint indicates that NUMMI was on notice regarding the contents of this complaint. Furthermore, summary judgment is appropriate in this case regardless of which complaint was filed in the District Court
 
 
 [2]
 The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff, however, "remains at all times with the plaintiff." St. Mary's, 113 S.Ct. at 2747 (quoting Burdine, 450 U.S. at 253)
 
 
 [3]
 In his declaration in support of his opposition to NUMMI's motion for summary judgment, Cannon does assert facts to support his breach of contract claim. He does not, however, discuss these facts in his memorandum in opposition to NUMMI's motion for summary judgment
 
 
 [4]
 To the extent that Cannon bases his breach of contract claim on the same set of operative facts which give rise to his racial discrimination claims, his failure to prove racial discrimination mandates failure on this basis on his breach of contract claim